## Bush et al. v. Board of Education of Clark County.

(Decided March 6, 1931.)

LEO T. WOOLFORD, D. L. PENDLETON, R. W. KEENON, and BRUCE & BULLITT for appellants.

BENTON & DAVIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—Reversing.

The Clark county board of education instituted this action against J. B. Bush, former sheriff of Clark county, and his sureties, claiming that for the years 1922, 1923, 1924, and 1925, when he was sheriff, he failed to pay to the board the full amount of money due the school fund with which he was chargeable.

As the action must be determined from a consideration of the statutory provisions governing such matters it is important to understand the steps taken by the county board of education and this means that it is necessary to consider the pleadings, the proof, and the statutes.

Omitting the formal parts of the petition, we find allegations to the following effect:

That for the year 1922 Bush collected for common school purposes the sum of $51,451.55, and that of this sum he was entitled to a commission of $514.52, leaving a balance of $50,937.03, which should have been paid to the board by the 1st day of January, 1923, but, instead of paying that sum, he only paid to the board $43,679.36, leaving a balance due the board on the 1st day of January, 1923, amounting to $5,892.60.

That for the year 1923 Bush collected for common school purposes a total sum of $73,650.39, and that he was entitled to a commission out of this amounting to $736.50, leaving a balance due the school fund of $72,-913.89, but that Bush paid to the board only $72,337.28, leaving a balance unpaid for that year of $576.61.

That for the year 1924 Bush collected for common school purposes a total of $74,199.53, on which he was entitled to a commission of $742, leaving a balance due the fund of $73,457.53, but that Bush paid over to the Board only $73,039.38, leaving a balance due for that year of $418.15.

That for the year 1925 Bush collected for common school purposes a total of $74,865.42, on which he was entitled to a commission of $748.65, leaving a balance

due the fund of $74,116.77, but that Bush only paid to the board $73,423.21, leaving a balance for that year of $693.56.

The prayer of the petition was for the recovery of the respective amounts for each of the years with interest from the 1st day of January immediately following the year in which the amount collected should have been paid to the board.

A general demurrer was filed to the petition by all of the defendants except the Fidelity & Deposit Company, which first filed a motion asking that the case be transferred to equity. The motion to transfer to equity was overruled, as was the general demurrer to the petition.

The defendants filed an answer making specific denial of the allegations in the petition, and, in addition, they pointed out certain items for which they claimed the sheriff was entitled to credit which had not been mentioned in the petition. They also alleged in their answer that the sheriff had made a complete settlement with the Clark fiscal court for each of the years mentioned in the petition, and in a separate paragraph the settlements were fully pleaded, referred to as exhibits, and made a part of the answer.

A third paragraph of the answer set up a plea of limitation as to the claim for the year 1922 on the ground that more than five years had elapsed since the sheriff had made a settlement for that year before the institution of the suit.

The board filed a demurrer to the second and third paragraphs of the answer, and, in addition, filed a motion to strike certain language from the first. The court sustained the general demurrer to the second and third paragraphs of the answer, and sustained the motion to strike certain matter from the first paragraph of the answer. Defendants filed an amended answer, in which it was alleged that each settlement covering each of the years in question was made with the fiscal court and approved by it and thereafter filed in the office of the Clark county court and duly recorded in a book kept for the recording of such settlements, and that no exceptions were filed to the settlements for either of the years mentioned. The amended answer also alleged that the custom of making and approving such settlements was followed, and that it had never been the practice in Clark

county to docket the sheriff's settlement except in cases where exceptions were filed to it.

The board objected to the filing of the amended answer, and the court sustained the objection, and it was not filed, although made a part of the record for the purpose of appeal.

On motion of the board, Bush was required to return to the county clerk's office the tax books showing the tax bill stubs for each of the years when he was sheriff, and the county clerk was required to deposit the books with the circuit court clerk, who should safely keep them with the right of examination in the parties to the action and also to the commissioner appointed to hear proof and report to the court. The court, on his own motion, referred the matter to the master commissioner of his court, with directions that he ascertain and report to the court the sums of money that Bush as sheriff had collected on account of the common school funds for the years when he was sheriff, and to ascertain the amount of the commissions to which the sheriff was legally entitled for making collection and distribution of the funds and any other credits to which he might be legally entitled, and also the sums paid by plaintiff to the board on account of the common school fund for each of the years. And the commissioner was further directed to find and report whether there was any balance due from Bush to the board for any of the years mentioned, and from what date interest should be charged, if any sum was found to be due, and what penalties, if any, should be legally chargeable to Bush on account of his failure, if there was any failure, to pay to the board money collected for the school fund.

The commissioner was directed to hear and preserve such evidence as the parties should produce before him, and was given authority to fix a time for the hearings.

Thereafter the master commissioner made a report in which he stated, in substance, that the only witness introduced who testified as to the audit of the books was W. G. Gustetter, who testified at length as to the audit and his findings, and filed with his deposition exhibits setting out the audit in detail. The commissioner reported that the testimony of Gustetter with the exhibits was very conclusive as to the correctness of his findings. He stated that other witnesses of minor importance were introduced by the board, and that very little testimony was produced by the defendants except

as to conversations between Mr. Gustetter and Mr. Bush, and that there was no testimony attacking the correctness of the report and findings made by Mr. Gustetter. He reported that the board was entitled to recover the amount set out in the petition, but it was not entitled to recover any penalties. He made the proof taken by him a part of his report.

After the report of the commissioner was filed, although he inadvertently stated that the board was entitled to recover the sums mentioned in the petition when he doubtless meant it was entitled to recover the sums established by the proof, the board filed an amended petition making corrections to conform to the proof. The differences in the amended petition and in the original petition were not of material importance.

Bush and his sureties filed exceptions to the report. The first exception related to the form and substance of the report. It was excepted to because it made no findings as to the amounts with which the sheriff should have been charged for each of the years, or the amounts which were paid. The second exception was based on the ground that the report was only a conclusion and not a finding of facts. The third exception was that the commissioner failed to pass on exceptions filed to the deposition of Gustetter, and that he found that the testimony of Gustetter was true, when as a matter of fact it was hearsay, and was not based on the best evidence obtainable. The fourth exception was on the ground that Gustetter was discredited, in that the company for which he worked had made a contract with the board whereby it was to receive one-half of the amount that should be recovered in the action. The fifth exception was to the effect that the testimony of Gustetter on which the commissioner based his report was not founded on records constituting his best evidence, or any evidence, of the amounts chargeable to Bush, as the testimony was based on the stubs of the tax books, and that the books were mutilated, and there was no proof showing that they had been preserved in such a manner as to render them competent evidence. The sixth exception was to the effect that the report of the master commissioner was incorrect because the only proper basis for an audit was the using of the recapitulation taken from the books of the county tax commissioner. The seventh exception was to the effect that the report was incorrect in its findings that the amount claimed in the petition was due,

and the eighth and last exception was based on the action of the commissioner in disregarding the settlements which Bush had made with the fiscal court.

The testimony consisted almost wholly of the audit made by Gustetter and his assistants. The company for which he worked as an accountant through Mr. Gustetter went to the county board of education and proposed to audit the books of the sheriff if the board would make a contract to pay a sum equal to one-half of any amount that might be recovered. At that time he did not know whether anything was recoverable, and it appeared that he was cruising about looking for such contracts. That he was an interested witness goes without saying, but that did not render his evidence incompetent. He obtained possession of the tax books, and ascertained the amount with which the sheriff should have been charged by adding the amount of the tax bills of the individual taxpayers as shown by the stubs. He ascertained from the county board of education the amount that had been paid to it by Bush each year. He deducted the amount so paid plus the commission from the total amount he found to be due each year by adding the amounts shown on the stubs. The balance in each instance was the amount that he found the sheriff was indebted to the board at the end of each year. Briefly, this was the evidence to support the allegations of the petition. Bush and his sureties attacked the correctness of the findings of Gustetter by attempting to show that the books were mutilated, and that certain tax bills had been taken from the books when they had not been paid, and that there were other irregularities which rendered the stubs incompetent as evidence. We will discuss that further along in the opinion. Bush and his sureties appear to have stood on their position that the evidence was incompetent and that the method of procedure followed by the board was not correct in such cases, and that the settlements made at the end of each year were conclusive.

The attorneys representing the respective parties are of outstanding ability and long experience, but there are many things on both sides which might have been cleared up, and it appears that those representing the board, as well as those representing Bush and his sureties, studiously kept away from that which should have constituted the real basis of the cause of action, or the real grounds of defense.

When the matter was submitted to the trial judge, he rendered an opinion which shows, on its fact, that he knew that there were omissions from the record which could have been included without difficulty. He had a case before him where the facts had not been fully developed. He stated, in his opinion, that it was contended by Bush and his sureties that the settlement with the sheriff should be based on the recapitulation as shown by the books of the county tax commissioner, which was the method pursued in making settlement with the sheriff by the commissioners appointed by the fiscal court. He then pointed out that the customary method of making such settlements was to use the recapitulations as the basis, and he stated, in his opinion, that the court had suggested that he would make the settlement on that basis, provided Bush and his sureties would furnish the court with correct recapitulations, which they declined to do. He then found it was apparent that the recapitulations used by the commissioners appointed by the fiscal court in making the settlements with the sheriff were not correct, due to the failure to extend certain figures to certain columns provided on the book for that purpose. He pointed out that the testimony of Gustetter was based on the tax bill stubs, and that he had no means of knowing whether the amount found by Gustetter was absolutely correct, but he said that the testimony of Gustetter was not attacked except in a collateral way by attacking the credibility of the witness. In concluding, the court said:

"Admitting that the settlements made by Lisle and Lary are competent evidence, they are manifestly based on admittedly incorrect premises, viz: the recapitulation as shown by the assessor's books, purporting to show assessments for school purposes. Although the case is submitted on the record presented, the court gave to defendants the right to supply a correct basis of settlement according to the method they are contending for, and when they declined to do so, practically the only evidence in the case upon which the court can base any sort of intelligent conclusion is the deposition of Gustetter. The Board of Education must not lose funds due them and actually collected by the sheriff because of the negligence of some public officer who failed to extend to the column on the assessor's books provided for that purpose the full amount of assessed

valuation of property liable for school taxes. You may prepare a judgment for the plaintiff agreeable to the prayer of the petition which will give to plaintiff, in the opinion of the court, only such monies actually collected by Bush for school purposes, and which he failed, through some misunderstanding, to pay to the Board of Education."

The judgment was for $10,217.74, with interest from October 1, 1929. The judgment evidently includes the interest prior to that date. We shall proceed to a consideration of the questions involved on this appeal, some of which are discussed in the briefs, and some of which are apparent on the record. Ordinarily, we will go no further than to discuss the points raised on the briefs, but the matters involved in this action are of general public interest, and a few general observations and statements of principles governing in such cases will not be amiss. The allegations of the petition are set out above. A general demurrer was filed and overruled. It is true there were allegations stating the amount collected by the sheriff as shown by the stubs of the tax bills, and the amount he was entitled to as commissioner and the amounts which he had paid to the school board, and the balances were stated as amounts still due by Bush to the board for which he and his sureties were liable. That did not necessarily follow. If the stubs on the tax bills showed the sheriff had collected a greater sum than he was chargeable with as shown by the records in the office of the county court clerk, that is, the final recapitulation of the books of the county tax commissioner and the receipt given by the sheriff for the tax bills, it by no means followed that the county board of education was entitled to the excess. It would indicate that there was an error in the tax bills and the stubs which had enabled the sheriff to collect illegal sums from the taxpayers, and the excess would be returnable to them.

In every such action the amount with which the sheriff is chargeable and the sum which should constitute the basis of the action is a record in the office of the county court clerk. In fact, there are two records. Section 4114i-15, Ky. Stats., relates to the recapitulation of the county tax commissioner as first made and before equalization by the state tax commission and the county board of supervisors. He makes up his tax books show-

ing the total amount of property in the county subject to taxation by the different jurisdictions, and files his books with the county court clerk, including his recapitulation. The law then provides as follows:

"The county court clerk shall test the accuracy of the extensions and additions as shown by the tax books of each incorporated town and each magisterial district, and the grand total, on blanks to be furnished by the state tax commission, and record said recapitulation in said tax books with his official certificate attached thereto. The county court clerk shall immediately thereafter, and not later than the second Monday in January, file with the said state tax commission a certified copy of said recapitulation showing the assessment of each incorporated town, the total assessment of each magisterial district, and the grand total assessment for the county for each item of property assessed therein."

If neither the state tax commission nor the county board of supervisors make any change in the recapitulation thus certified by the county clerk, it would stand as the basis on which the sheriff should be charged with taxes which he must account for. The next section of the Statutes deals with the duties of the state tax commission. It is made its duty to examine the recapitulation sheet as certified by the county court clerk, and, upon investigation, it either determines that the county has been fairly assessed or that the assessment should be increased or reduced. The next two succeeding sections relate to the hearings by the counties before the state tax commission. Sections 4115 to 4128a-4, Ky. Stats., deal with the duties of the county board of supervisors and the county court clerk. The supervisors, by giving notice, may increase, or decrease, assessments, and, when they have completed their work, they correct the books of the county tax commissioner to conform to the changes which they have made, and these changes necessarily result in a change of the recapitulation referred to above which is first made up by county tax commissioner and approved by the county clerk. The completion of their work is provided for in section 4125, Ky. Stats., which is as follows:

"The board of supervisors shall keep a record of their proceedings and correct the county tax com-

missioners' books thereby. They shall annex their certificate to the books that they have examined and approve the same and the number of days they were actually engaged, and shall return the same with the record of their proceedings to the county court clerk on or before the second Monday in April.''

Section 4128a-1, Ky. Stats., is as follows:

''The county court clerk shall, after the examination and approval of the county tax commissioners' books by the board of supervisors, make and record a recapitulation of the county tax commissioners' books as revised by the supervisors in the same manner as provided by chapter one hundred and fourteen of the acts of the general assembly of one thousand nine hundred and twenty-two. On or before April fifteenth, the county court clerk shall file with the state tax commission a certified copy of said recapitulation.''

When this has been done, the recapitulation mentioned in section 4114i-15, Ky. Stats., has been corrected to show the total amount of property subject to taxation, and it is grouped according to the tax rate and according to taxing jurisdictions, so that the amount with which the sheriff is chargeable is ascertainable in the same way that an individual tax bill is made out. Real estate totals so much, and the tax rate is so much. Live stock totals so much, and the tax rate is so much. The tax rate is applied for state purposes, county purposes, school purposes, and district purposes, as the case may be. When the recapitulation is finally corrected in the office of the county court clerk, it forms the basis for the determination of the amount for which the sheriff must account to each fund in each taxing jurisdiction.

This is not the only record in the office of the county court clerk from which the amount with which the sheriff is charged is shown. Section 4239a, Ky. Stats., provides for the final record which shows the sum total with which the sheriff himself is required to admit by a certificate and receipt executed by him that he is chargeable with the sums aggregated by the addition of all of the tax bills. This section requires the county clerk to deliver to the sheriff in book form consecutively numbered the tax bills arranged alphabetically and by cities and magisterial districts. This delivery of the tax

receipts with the stubs to the sheriff must take place within thirty days after the auditor of public accounts has certified the equalized value of the property in the county subject to taxes for state purposes. The county clerk, when he delivers these tax books to the sheriff, must take from the sheriff a receipt showing the number of tax bills, each additional line, and the total amount of taxes due the state, the county, and the county school fund. This receipt must be signed and acknowledged by the sheriff before the county court clerk, and must be filed before the county court and recorded in the order book of that court in the same way and manner as the official bond of the sheriff shall be recorded.

This receipt executed by the sheriff is but the sum total of the taxes with which the sheriff shall be charged and the total of each fund with which he must be charged. When the sheriff executes his receipt, he is bound to account for the amount of money which he admits is due to the respective funds, unless he should be able to show, by proper proof at the proper time in a court having jurisdiction, that there was some error in the amount set down in the receipt. The amount shown by the receipt will reflect the amount ascertainable by applying the proper tax rate to the property assessed for taxation as shown by the grand total of property subject to taxation in the county which is the recapitulation of the totals of the respective taxing districts in the county. The recapitulation and the receipt executed by the sheriff will always be in accord, unless there is some error. The receipt executed by the sheriff at the time he receives the tax bills and stubs can be proven by the addition of the individual tax bills. When the county clerk receives the books of the county tax commissioner after having been approved by the county board of supervisors, he must make all necessary corrections, and he must make out the tax bills. He can readily determine the amount of taxes for which the sheriff must account by applying the tax rate to the total valuation of property subject to taxation in the separate jurisdictions and for the benefit of the separate funds. When he makes out the tax bills and stubs, he proves the correctness of his work by the addition of the amounts shown by the individual bills, and, if the amounts shown check with the amounts ascertained by him by his calculation based on the final recapitulation, he knows that his work is correct. When the sheriff comes to execute his receipt, he

can almost immediately make the calculation based on the recapitulation, and in that way he will know at once whether the receipt which the clerk requires him to sign is correct. He can prove the correctness of the work of the clerk by adding the total of the individual tax bills.

The Statutes provide an elaborate method of reducing all of the work done by the officers in connection with making assessments to a point where it is definitely shown the exact sum that the different funds may expect from the sheriff when the collections are completed.

When an action is instituted to charge the sheriff with a failure to pay over money to any fund, the first thing to be ascertained is the amount with which the sheriff was properly chargeable. That is shown by the records in the office of the county court clerk. These records are the recapitulation of the books of the county tax commissioner and the receipt executed by the sheriff to the county clerk and recorded in the office of the county clerk. These records must stand as correct, unless impeached by the one attacking their correctness. It may be shown that through fraud or mistake the recorded amount with which the sheriff is charged is inaccurate. Without pleading and proof showing that the amounts charged against the sheriff are inaccurate, they must stand as correct.

When it comes to settle with the sheriff, there are certain additions with which he must be charged and certain subtractions which may be made. Omitted tax lists are filed with the county court clerk; franchise tax assessments and other assessments, made in a special manner, are also filed with the county clerk. In settling with the sheriff, these separate charges are made against him, and the amounts are added to the amount shown to be due by the receipt which he executed to the county clerk. The subtractions may be on account of exonerations made by the county court as provided by the Statute, or by the judgment of some court growing out of litigation over the amount of assessments, the delinquent list, and any other sum or sums that may be established by the procedure before the proper court. The things enumerated are only illustrative of what may be added to the sums shown to be due by the receipt executed by the sheriff, or what may be deducted.

When we examine the pleadings and evidence in the case before us, and measure them by the Statutes discussed above, the failure to make out a case according

to the rules announced is apparent. Neither in the pleadings nor in the evidence is there any reference to the recapitulation or the receipt executed by the sheriff as it should appear on record in the office of the county court clerk. We do not know with what the sheriff was charged, or what amount he was expected to account for to the county board of education. It is true the statement by the interested auditors made up from the tax bills established a sum with which he should be charged, but the way to establish the correctness of that sum is by a comparison with the records in the office of the county court clerk.

It may be argued in some cases that there may be no such record, and that may be true, but a failure to have such a record in a matter so important to the public and to the officers is a duty which should not be overlooked. If, however, the officer, or officers, whose duty it is to make such records, has failed to do so, the taxpayers of the county, or of any taxing jurisdiction, should not be made to suffer by reason of the dereliction of their officers. In such a case it may be pleaded and proven that there are no such records, and, upon establishment of that fact, the best evidence available could be used to determine the amount with which the sheriff should be charged. It is a cumbersome method to use the tax bills, and, when they are made out of by an officer who is so careless as to fail to perform the important duty of making the all-important record in his office, their correctness might be viewed with suspicion, but, if they are the best evidence obtainable, then they may be resorted to. Com. v. Towery, 232 Ky. 802, 24 S. W. (2d) 597.

It may be that the method pursued established that the sheriff had collected a greater amount than he accounted for, but that does not establish, in the absence of allegation and proof, that the excess sums which he collected above what he paid belonged to the school fund. He may have collected a greater sum from individual taxpayers than was properly chargeable against them, and in such a state of case he held the money so collected in trust for the taxpayers from whom he collected it. Com. v. Griffy, 208 Ky. 469, 271 S. W. 560.

When the county board of education alleged that the sheriff had collected funds belonging to it for which he had not accounted, and this allegation was denied, the

burden was on the board to establish the truth of the allegation by competent proof. The trial court, in his opinion, stated that he had given an opportunity to Bush to show by the recapitulation that he was not indebted to the county board of education. It was the duty of the board to show, by the recapitulation and the receipt of the sheriff in the office of the county court clerk, that he had not accounted for the amount with which he was properly chargeable, and by other available evidence in that office. If the board was unable to show, by the amount with which the sheriff was chargeable, the burden was on it to establish, by pleading and proof, that the necessary records were not available, or, if available, that they were erroneous because of mistake or fraud.

In view of what has been said, the demurrer to the petition should have been sustained, with leave to the plaintiff to amend.

Bush had made settlements with commissioners appointed by the fiscal court for each year that he was in office, and Bush and his sureties are relying on these settlements as conclusive, as no exceptions were filed to them. The record does not show that these settlements were made as required by the Statutes. They were legally made with the fiscal court and approved by it, and they were filed in the office of the county court clerk, but it appears that they were not approved by the county court. Under the principles announced in Com. v. Mackey, 168 Ky. 58, 181 S. W. 621; Shipp v. Bradley, 210 Ky. 51, 275 S. W. 1; Com. v. Nunnelley, 211 Ky. 409, 277 S. W. 506; American Surety Co. v. Bales, 228 Ky. 543, 15 S. W. (2d) 481; Perry County v. Holliday, 231 Ky. 587, 21 S. W. (2d) 989, the principles governing are discussed at length.

The soundness of the principles announced in Shipp v. Bradley, supra, has been questioned, but this court has upheld the constructions placed on sections 1884 and 4146, Ky. Stats., governing the settlements of sheriffs, and the constructions placed upon these sections by that opinion are harmonious and afford a rule governing the settlements with sheriffs which may be easily followed. It is suggested, however, that by the provsions of chapter 36 of the Acts of 1920, which was section 4399a-8, Ky. records in the office of the county court clerk, the true Stats., prior to its amendment by chapter 81 of the Acts of 1926, the settlement with the fiscal court made by the

sheriff for taxes due the county board of education was not required to be filed in the office of the county court clerk and approved by the county court. That act required the sheriff to make a settlement with the fiscal court in the same manner as provided for the settlement of county taxes, and that a copy of the settlement should be filed by the county board of education. That did not obviate the necessity of the filing of the settlement with the county court clerk and its approval by the county court. The evident purpose of requiring a copy to be filed by the county board of education was to give that board an opportunity to file exceptions to the settlement in the county court, if it so desired.

Serious argument is made against the competency of the evidence of Gustetter. It is said that he did not make all of the calculations in the audit filed as an exhibit, and that his testimony was therefore hearsay. It is generally held that, where a fact can be ascertained only by the inspection of a large number of documents made up of many detailed statements, for the convenience of trials evidence may be offered in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. When testimony of this character is allowed, it is usually a condition imposed by the courts that the mass of the evidence summarily stated by the witness shall be placed in the hands of the court, or made accessible to the opposing party in order that the correctness of the evidence may be tested by inspection, or that material for cross-examination may be obtained. That is a sound rule, and is supported by 2 Wigmore on Evidence, p. 1473, and it has been approved by this court in Louisville Bridge Co. v. L. & N. R. R. Co., 116 Ky. 258, 75 S. W. 285, 25 Ky. Law Rep. 405; Edelen v. Muir, 163 Ky. 685, 174 S. W. 474; Esterman-Verkamp Co. v. Rouse, 211 Ky. 791, 278 S. W. 124.

It is argued by counsel for appellants that the evidence was not competent on another ground, that is, that Gustetter was an interested party, and that he had been in possession of the tax books for several months before he completed his audit, and that their verity was thereby destroyed. It is also testified to that he made contradictory statements, and that he offered to settle with Bush without making any report. He denied all of these

312

statements except that he was interested, but none of these things rendered him incompetent as a witness. They only went to his credibility.

As said by the trial court, the county board of education should not be made to lose money because of the failure of some official to do his duty. If Bush and his sureties are indebted to the county board of education, and that fact can be established by proper pleadings and competent proof, they should be required to account for any money which has not been paid to the board. The cases cited in this opinion show that there has been no settlement made with the sheriff, and, when no settlement is made, a settlement must be made through court proceedings, and, until a settlement is made, the right of action continues, unless barred by the statute of limitation. The Bales case, supra, discusses the statute of limitation, and states the principles governing that plea, and it is not available to Bush and his sureties in this case. The judgment of the lower court, since it must be reversed does not constitute a settlement between the sheriff and the county board of education, and, upon a return of the case such proceedings may be had as will bring about a settlement under the Statutes governing such matters. This suit was brought at common law, and, while it proceeded as an equitable action, and it may be that it should have been so brought, yet the judgment of the court below, being erroneous, should not preclude the county board of education from prosecuting the action until a proper settlement is determined by the judgment of the court.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.