STATE OF MISSOURI at the Relation of SULLIVAN COUNTY v. MARYLAND CASUALTY COMPANY, Plaintiff in Error.—66 S. W. (2d) 537.

Division One, December 11, 1933.

260

*Harris & Koontz* for plaintiff in error.

*E. M. Harber, P. M. Marr, L. E. Atherton* and *M. D. Campbell* for defendant in error.

GANTT, J.—Action against Wm. A. Matkins and the Maryland Casualty Company on the bond given by Matkins as treasurer of Sullivan County.

In substance, the petition alleged the election of Matkins as said treasurer on November 4, 1924; that he duly qualified and was commissioned on May 1, 1925; that the Maryland Casualty Company was incorporated under the laws of Maryland; that it was authorized to become surety on bonds in Missouri for hire; that on September 29, 1925, Matkins, as principal, and the casualty company, as surety, executed an official bond for $120,000 payable to the State and conditioned upon the faithful performance by Matkins of his duties as treasurer of said county; that said bond became effective about October 1, 1925, and was in full force and effect at all times herein mentioned; that Matkins continued in the discharge of his duties as treasurer and *ex officio* collector of said county, under township organization, until July 12, 1928, at which time he resigned as treasurer of said county; that between October 1, 1925, and July 12, 1928, Matkins collected and received large sums of money due the State, county and various subdivisions thereof; that he commingled the taxes, funds and amounts collected by him as treasurer and *ex officio* collector and did not keep said sums separated into specific funds as required by law; that he failed to account to the State, county and subdivisions thereof for all funds collected by him, and failed to pay orders, warrants and demands legally drawn against money under his control as such officer; that he misappropriated said funds so received by him between said dates to the amount of $24,112.91, and failed and refused to account to the State, county and subdivisions thereof for said sums of money; that the casualty company was duly notified of said misapproriation, and demand was made for said sum; that it neglected to comply with said demand, and did so without lawful excuse. Wherefore, relator prayed judgment for $120,000, to be satisfied upon payment of $31,525.30, which included interest on $24,113.91 from July 12, 1928, with penalty and attorneys fee for vexatious refusal of the casualty company to pay the State, county and subdivisions thereof the funds misappropriated.

The answer of the casualty company admitted that Matkins was the duly qualified and commissioned treasurer of Sullivan County; that said company was incorporated under the laws of Maryland and

duly authorized to become surety on bonds in this State for hire; that said company duly executed the bond sued upon, all as alleged in the petition, and further answering denied each and every other allegation in the petition. The defendant Matkins did not answer.

The cause was tried to the court without a jury, no declarations of law were requested or given, and the court made no finding of fact at the request of a party to the suit. It found for defendants on the issue of vexatious delay and for plaintiff on the merits for $120,000, to be satisfied upon the payment of $21,688.31, with interest at six per cent from July 12, 1928, and for costs. Judgment was entered accordingly.

The record is here on writ of error sued out by the defendants. Thereafter Matkins abandoned the proceeding in this court, and as to him the writ is dismissed.

■ On its own motion, the court made a special finding of fact. The finding has no place in the record and must be ignored in determining the questions presented on this review. [Kansas City v. Boyer, 202 S. W. 1086; State ex rel. Ward v. Trimble, 327 Mo. 773, 39 S. W. (2d) 372.]

I. Defendant company contends that the judgment is not supported by substantial evidence.

There was evidence tending to show the following: In July, 1928, the county clerk, his deputy, a bank official and Matkins examined the records and books of Matkins, as said official, to determine conditions since his last report to the county court, as treasurer, on April 30, 1928. The examination disclosed a shortage of about $18,700. At that time Matkins said, "The shortage shouldn't be that much."

Thereafter an accountant, admitted to be an expert, with an assistant working under his supervision, made an audit of the official records of Matkins. In doing so he examined, among other records connected with and incidental to said office, the records of the official bank depositories of the county treasurer, checks drawn on said depositories by Matkins as an official, the fund record, county revenue receipts and disbursements, railroad tax book, warrant register, back tax receipt books, loanable funds register, treasurer's account book, the criminal cost record and quarterly statements of Matkins made to the county court as treasurer. In making the examination he had access to all the books and records in and incidental to said office. At the trial these records were in court and subject to use in the trial of the case. All of the records were in evidence upon which the report of the accountant was based, and other records of said office were in evidence with the privilege of using such parts as might be material. Furthermore, and in connection with the testimony and summary of the accountant, the assistant to the accountant testified to the correctness of his part of

the examination, and cashiers of the depository banks testified and corroborated the testimony of the accountant as to the condition of Matkins' accounts with the banks as treasurer of the county. The examination by the accountant disclosed the shortage in the account as treasurer from October 1, 1925, to July 12, 1928, to be $24,113.91. The accountant so testified and a summary of his examination was admitted in evidence.

Furthermore, on the question of commingling funds, there was in evidence a large number of back tax receipts and a large number of deposit slips of the depository banks, tending to show that Matkins from time to time deposited in said banks to his account as treasurer sums of money collected by him as *ex officio* collector. Furthermore, the bank officials of depository banks testified that Matkins had only one official account with the banks and that was as treasurer. The accountant also gave similar testimony. On the question the accountant testified as follows:

"Q. Mr. Craig, the total in the depository bank was $38,996.10? A. Yes, sir.

"Q. Were you able to find, or did you find, any record to show what particular money he received made up that account? Whether he put in all the back tax money and made his shortage on some other fund, or whether he took some other funds and made away with the back taxes? A. I couldn't divide up this $38,996.10 to show what funds it belonged to.

"Q. Why? A. Because there were no records to show what particular funds it belonged to?

"Q. In the bank account he simply deposited money without showing the source or fund to which the deposit belonged? A. Yes, because this was all under one name in the bank account.

"Q. In what name? A. In each of the different banks.

"Q. But in what name? A. Under the name of W. A. Matkins, Treasurer."

In the case of State ex rel. Dunklin County v. Blakemore, 275 Mo. 695, 205 S. W. 626, we considered the commingling of funds by a treasurer and *ex officio* collector. It was a suit against the treasurer and the surety on his bond. In ruling an instruction given in that case we said:

"The court instructed, in substance, that if Blakemore failed to pay over a balance he owed, and if it was found he mingled the several funds so they lost their identity and it became impossible to tell which fund, if any, was short, 'then defendants are estopped to deny that such shortage belonged to the funds covered by the bond sued on,' etc.

". . . To permit him (county treasurer and *ex officio* collector) to produce this condition (commingling of funds) and then defeat a suit against him on the ground that respondent could not prove something he had rendered impossible of proof would be to permit

him to profit by his own wrong. Such a defense is not permissible. Public policy forbids recognition of a defense which would make it possible for every county treasurer, by merely mingling funds, to defeat all liability on his bond."

Thus it appears that the judgment is supported by substantial evidence tending to show a shortage of more than $21,688.31, and also tending to show that Matkins as an official commingled funds held by him as *ex officio* collector with funds held by him as treasurer.

In this connection defendant contends that the quarterly statements of Matkins, as treasurer, submitted to the county court furnished no ground for liability on the bond for the reason Matkins as *ex officio* collector did not comply with Sections 9927 and 9932, Revised Statutes 1929.

It is provided in Section 9927 that collectors and *ex officio* collectors shall, on or before the fifth day of each month, file a statement with the county clerk showing the amount of taxes and licenses collected by him during the preceding month, and that they shall, on or before the fifteenth day of the month, pay said amount, less commissions, into the State and county treasuries.

And it is provided in Section 9932 that upon payment by the collector to the treasurer of the amount found due on said monthly settlements with the county court, the treasurer shall give the collector duplicate receipts therefor, one of which shall be filed in the office of the clerk of the county court, who shall grant the collector a full *quietus*.

Defendant Matkins did not comply with these sections. However, as stated, he made quarterly statements and settlements with the county court as treasurer. We do not think that Matkins should be permitted to profit by his failure to perform his duty as an official. Indeed, we have so ruled. In State ex rel. Dunklin County v. Blakemore, supra, we held that a treasurer under township organization and the surety on his bond are estopped to set up the failure of the treasurer to perform his duty as a defense to an action on the bond given to secure the faithful performance of the official duties of the treasurer.

II. Defendant company also contends that the summary of the audit of the official records of Matkins was a self-serving statement of the accountant and for that reason should not have been admitted in evidence.

It cites no authority to sustain the contention. The accountant testified as a witness in the case from the summary, and he was cross-examined at length on his report. The rule is well settled that where the evidence is the result of the inspection of many books and papers, the examination of which cannot conveniently take place in court, the summary of the audit in connection with the testimony of the accountant is admissible in evidence. [Masonic Mutual Benefit So-

ciety v. Lackland, 97 Mo. 137, 10 S. W. 895; State v. Findley, 101 Mo. 217, l. c. 223, 14 S. W. 185, 66 A. L. R. 1207, 1217n.]

III. It also contends that the quarterly statements made by Matkins as treasurer to the county court were not admissible in evidence. This contention has been abandoned.

IV. It also contends that the court should not have allowed plaintiff a certain credit in determining the amount of liability on the bond. There is nothing in the record to indicate that the court allowed plaintiff said credit. As stated, the special finding of fact by the court is not a part of the record and must be ignored in determining the questions presented.

The judgment should be affirmed. It is so ordered. All concur.