**SHREVE et al. v. UNITED STATES.**
No. 7460.

Circuit Court of Appeals, Ninth Circuit.
April 29, 1935.

See, also, 73 F.(2d) 542, 543.

Charles C. Crouch, of San Diego, Cal., Leslie C. Hardy, of Tucson, Ariz., and Louis B. Whitney, Alexander B. Baker, and Lawrence L. Howe, all of Phœnix, Ariz., for appellants Shreve and Evans.

Weinberger & Miller, of San Diego, Cal., for appellant Perkins.

Clifton Mathews, U. S. Atty., of Phœnix, Ariz., and John P. Dougherty, Asst. U. S.

**4**

Atty., of Tucson, Ariz., for the United States.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

The defendants were charged by indictment with a violation of 18 USCA §§ 88 and 338. Eleven counts charge the use of the mails in furtherance of schemes to defraud certain persons named in the indictment and others of the general public. The twelfth count alleges conspiracy to carry out the schemes alleged in the first eleven counts, by means of organizing a building and loan association and by the incorporation of the Arizona Holding Corporation and the Century Investment Trust. The sufficiency of the indictment to charge an offense and of the evidence to support the verdict of guilty is not challenged. A general statement of the facts involved is necessary to an intelligent consideration of the case on appeal.

The scheme charged in the first count of the indictment is one to organize a building and loan association under the laws of the state of Arizona, to be known as the Security Building & Loan Association. It is alleged that in order to secure business for this association defendants planned to make certain false pretenses, representations, and promises with reference to the financial stability of said building and loan association; its guaranteed capital; its intention to pay 6 per cent. interest; its promise to allow deposits to be withdrawn at any time; its intention to invest the funds of the association in sound first mortgages on improved real estate, and that $300,000 of the capital of the corporation had been paid in. It is alleged that by means of these representations large sums of money were obtained and that in pursuance of the plan certain letters set out in the first three counts of the indictment were mailed. The fourth count charges a scheme to defraud by the incorporation of the Century Investment Trust and the Arizona Holding Corporation, both under the laws of the state of Arizona; that large amounts of stock of these two corporations would be sold to the public upon certain false representations and promises, among others, that the Century Investment Trust was solvent, that it was doing a large and profitable business, that it had net earnings, and net income for the payment of dividends; that the defendants would pretend dividends would be paid from the earnings whereas they were not to be so paid but were to be paid and were paid from funds supplied to the Century Investment Trust by the defendants. Counts 5, 6, 7, 8, 9, and 10 allege the mailing of letters in furtherance of this second scheme to defraud, and the twelfth count alleges conspiracy, as above stated.

The evidence upon which the government sought conviction, so far as appears from the bill of exceptions, consisted largely of the books of the three corporations named in the indictment, and also of a large number of other corporations with which the named corporations, or the defendants, transacted business. These books and documents were incorporated in the bill of exceptions by reference thereto and by number (Krauss Bros. Lumber Co. v. Mellon, 276 U. S. 386, 48 S. Ct. 358, 72 L. Ed. 620) and it was stipulated that all of them could be sent to this court as a part of the evidence in the case and that each side might select such exhibits to be transmitted as they desired to be considered by this court. It is said that these exhibits made a "truck load" of books and documents. Without these exhibits, or without better understanding of their contents than is given by the bill of exceptions, we have found great difficulty in determining the questions presented on the appeal. We have concluded, however, that at least one of the rulings of the trial court in admitting evidence is so clearly erroneous and prejudicial that the judgment must be reversed. We will, therefore, first consider this ruling, stating such facts as are essential to its consideration.

C. K. Firestone, a special agent of the Division of Investigation of the Department of Justice, after preliminary proof as to his competency as an accountant, testified that he had examined the books of the Century Investment Trust and the Arizona Holding Corporation and that they showed the purchase of a note of the Tucson Realty & Trust Company. We quote the testimony as follows: "That examination shows among other things, that on November 15, 1929, there is recorded the sale by the Century Investment Trust to the Arizona Holding Corporation 4,000 shares of its preferred stock, 4,000 shares of its common stock and 4,000 shares of Series A stock, for a total of $100,000, which is recorded as having been received in cash. The books do not record that the cash was deposited. There is recorded on that same date that this $100,000 in cash was spent by payment to the Arizona

Holding Corporation to pay for the purchase of a note of $38,540.07 of the Tucson Realty and Trust Company for $32,500; and $1,660.68 mortgage of Glen O. Perkins for $1,000; $9,100 worth of Santa Rita bonds for $6,500; and the purchase of 350 shares of the stock of the Security Building and Loan Association at $60,000, making a total of $100,000."

Thereafter, H. B. Hazeltine, the secretary of the Tucson Realty & Trust Company, who had been connected with the company since 1917 was called as a witness for the government, and the following occurred:

"Q. Mr. Hazeltine, I will ask you if you are familiar with the books and records of the Tucson Realty and Trust Company? A. I am.

"Q. And were you familiar with the records of the Tucson Realty and Trust Company for the years 1928 and 1929? A. Yes sir.

"Q. Now, I will ask you, Mr. Hazeltine, whether during the years 1928 or 1929 the Tucson Realty and Trust Company was obligated on any note in the amount of $38,540.07 to the Arizona Holding Corporation?

"Mr. Hardy. We object to that; it is not the best evidence.

"Mr. Perrin. I presume if the witness has made an examination. * * *

"Mr. Hardy. That is not the question.

"Mr. Perrin. I don't see how—this could be negative testimony. We can't show it in the record.

"Mr. Hardy. Negative testimony?

"Mr. Perrin. If it should be negative testimony.

"Q. I will ask you, Mr. Hazeltine, whether you have examined the books and the records of the Tucson Realty and Trust Company for 1928 and 1929 to determine whether the Tucson Realty and Trust Company was obligated on a note payable to the Arizona Holding Corporation in the amount of $38,540.07?

"Mr. Hardy. That, Your Honor, is the same question in a different form. He is examining the witness on something that the Court has ruled out."

Objection overruled. Exception.

"The Witness. I have examined the records, yes sir.

"Q. I will ask you Mr. Hazeltine, whether they show the existence of such a note?

"Mr. Hardy. We object to that; the books are the best evidence."

Objection overruled. Exception.

"The Witness. They do not.

"Q. Now, I will ask you, Mr. Hazeltine, whether you have examined the books of the Tucson Realty and Trust Company to determine whether the Tucson Realty and Trust Company was obligated on any note to the Century Investment Trust in the amount of $38,540.07?

"Mr. Hardy. We object to that, Your Honor; no proper foundation has been laid."

Objection overruled. Exception.

"The Witness. I have examined the records and found no such note.

"Q. Now, I will ask you, Mr. Hazeltine, if you have examined the records of the Tucson Realty and Trust Company to determine whether they were—whether they were obligated to any one during the years 1928 and 1929 a note in the amount of $38,540.07?

"Mr. Hardy. We object to that; Your Honor, it is immaterial.

"The Court. The witness may answer the question."

Objection overruled. Exception.

"The Witness. My examination does not reveal that any such note was issued to anybody."

The assignments of error relate only to the first objection that the books are the best evidence. It will be observed that to the next question of similar import the objection was made that no proper foundation was laid and to the third question the objection is that it is immaterial.

It seems entirely clear that the books are the best evidence, not only of what they contain but what they do not contain. See Aspinwall v. Chisholm, 109 Ga. 437, 34 S. E. 568; but see contra, Perry v. Camilla Cotton Oil, etc., Co., 28 Ga. App. 512, 111 S. E. 823. The rule is stated as follows in 10 R. C. L., § 59, p. 906: "The material contents of an existing book which is obtainable cannot be proven by parol testimony, as the book itself is the best evidence. Account books, if in existence, are the best evidence of their contents, and a witness may not state the condition of such accounts from memory while such books are accessible. Similarly secondary evidence of the books and papers of a corporation is inadmissible where the originals are available.

\* \* \* Furthermore, where books are put in evidence, and it would take a long time to read to the jury the various entries which show the facts relied upon, a witness who has examined the books may be permitted, in the first instance, to state what they contain, not as his own testimony, independently of the books, but as a convenient way of presenting their contents to the jury."

See, also, Pabst Brewing Co. v. E. Clemens Horst Co. (C. C. A.) 229 F. 913, 918; Worden v. United States (C. C. A.) 204 F. 1; Barrett v. United States (C. C. A.) 33 F. (2d) 115; Phillips v. United States (C. C. A.) 201 F. 259; 16 C. J. p. 743, § 1527; Jones Commentaries on Evidence (2d Ed.) vol. IV, § 1796, p. 3315.

■ Unless the reception of this evidence comes within some exception to the rule requiring the best evidence, the ruling of the trial court was erroneous. The principal exception to the rule requiring the best evidence is one based upon convenience. This rule permits the introduction of secondary evidence of the contents of books of account where they are voluminous and it would be impracticable to make the required examination during the progress of the trial. We cite some of the recent cases sustaining this rule: State ex rel. Sullivan County v. Maryland Cas. Co., 334 Mo. 259, 66 S.W. (2d) 537; Bush v. Board of Education, 238 Ky. 297, 37 S.W. (2d) 849; American Surety Co. of New York v. North Texas Nat. Bank (Tex. Civ. App.) 14 S.W. (2d) 88, 89; Hartford Accident, etc., Co. v. Shaw (Tex. Civ. App.) 8 S.W. (2d) 196; Wishek v. United States Fidelity & Guar. Co., 55 N. D. 321, 213 N. W. 488; Inter-State Finance Corporation v. Commercial Jewelry Co., 280 Ill. 116, 117 N. E. 440; Oklahoma Gas & Elec. Co. v. Bates, etc., Co. (D. C.) 34 F. (2d) 547; Wolford v. Farnham, 47 Minn. 95, 49 N. W. 528. The substance of the rule is stated by the Supreme Court in Burton v. Driggs, 20 Wall. (87 U. S.) 125, 136, 22 L. Ed. 299, as follows: "When it is necessary to prove the results of voluminous facts or of the examination of many books and papers, and the examination cannot be conveniently made in court, the results may be proved by the person who made the examination."

This is not a full statement of the rule as will appear by an examination of the recent authorities which we have cited. The case of Burton v. Driggs, supra, is strongly relied upon by the government in the case at bar. It should be noted in considering the effect of this decision that the objection under consideration was to the testimony of certain witnesses: "As referred to what appeared or what did not appear on the books of the Tioga County Bank." It appears from the opinion that the books were out of the jurisdiction of the trial court and therefore that secondary evidence was admissible. To support the admissibility of the testimony of the expert as to what the books of the Tucson Realty & Trust Company did not show, the government relies upon the following statement in that opinion: "Here the object was to prove, not that the books did, but that they did not show certain things. The results sought to be established were not affirmative, but negative. If such testimony be competent as to the former, a multo fortiori must it be so to prove the latter." Burton v. Driggs, supra.

■ In considering the weight and effect of this decision, it must be borne in mind that under the facts in that case secondary evidence was admissible because the books were beyond the jurisdiction of the court and what the court held in that respect was that if secondary evidence was admissible as to what the books contained, it was also admissible as to what they did not contain. We conclude then that the record in the case at bar does not disclose that secondary evidence was admissible under the rule of convenience, or otherwise, and that the court erred in admitting this evidence.

In view of a new trial, and also because of the necessity of determining that the ruling in question was prejudicial, we will also consider the objection that "no proper foundation has been laid," and the objection that the evidence was immaterial or incompetent.

■ With reference to the admissibility of the books of the Tucson Realty & Trust Company, it should first be noted that it is essential to their introduction that it should be shown that they were kept in the ordinary course of business and that they contained an accurate record of all the business of the corporation (Pabst Brewing Co. v. E. Clemens Horst Co., supra), and particularly that under the method of bookkeeping adopted by the corporation the books would disclose the existence of all outstanding indebtedness. No such evidence was introduced.

The next question is whether or not evidence of the fact that the books did not disclose the existence of an outstanding note, an affirmative fact, was proof or evi-

dence of the fact that there was no such note, a negative fact. It was to prove this negative fact that the evidence was adduced. The decisions are not entirely in accord upon the question of whether or not the circumstance that books do not disclose a fact is evidence of the nonexistence of the fact. The divergence of view is perhaps partly due to the different situations in which the matter has been presented to the courts for decision. Jones on Evidence states the rule as follows: "And it is said, generally, that books of account are admissible only as affirmative evidence in any event, and not for the purpose of establishing, from the circumstance that no entry appears, a negative proposition such as the nonexistence or nonoccurrence of a fact or event; though it may be doubted whether statement of such proposition as a rule of general application is warranted." Jones Com. on Evid. (2d Ed.) vol. 4, p. 3288, § 1782.

On this subject we cite the following cases which hold that the nonexistence of a debt or obligation cannot be established by proof that the books contain no such entry: Boor v. Moschell, 55 Hun, 604, 8 N. Y. S. 583; Scott v. Bailey, 73 Vt. 49, 50 A. 557; Lawhorn v. Carter, 11 Bush (74 Ky.) 7; Riley v. Boehm, 167 Mass. 183, 45 N. E. 84; Kerns v. McKean, 76 Cal. 87, 18 P. 122; Lewis v. McNeal, 58 Cal. App. 70, 71, 207 P. 1021. Conceding that under some circumstances it may be proper to show that books, particularly public records, or account books required by law to be kept by public utilities, banks, etc., may sometimes be admissible to prove a negative, it is clear that the books of the Tucson Realty & Trust Company were not admissible for that purpose. There is also in the case at bar an additional reason for excluding these books. They are books of third parties to which the defendants were in no wise connected and at best they amounted to nothing more than the declaration of a third party. They were clearly hearsay as to the defendants and were therefore incompetent. Moreover, if we assume that the evidence was otherwise admissible, the answers elicited were analogous to a negative pregnant. The attempt was to establish that the obligation of the Tucson Realty & Trust Company purported to be purchased by one of the defendants' corporations from another of defendants' corporations, was a nonexistent obligation, and that the sale was therefore fictitious. The testimony as to a note payable to the Arizona Holding Corporation was not germane to the issue for the reason that the obligation may have been on a note payable to some other corporation or individual assigned to the Arizona Holding Corporation. Moreover, the statement of the amount of the note as $38,540.07 is not responsive to the issue for the reason that it is highly improbable that the amount of the note was the exact amount stated in the books of the defendants' corporations because that amount probably was the amount of the principal plus the accrued interest and that the note was an obligation for the exact amount stated in the books only on the day of the purchase. The jury by this evidence was given the impression that because the books of the Tucson Realty & Trust Company did not show an obligation in the exact amount of $38,540.07 that the subject of the transfer from the Arizona Holding Corporation to the Century Investment Trust was fictitous and the transaction fraudulent. Moreover, the corresponding entry on the books of the Century Investment Trust show an amount "$38,540.07 November 14, trust agreement between Tucson Realty & Trust Co., Pinal Investment Co., and J. H. Shreve." The witness H. B. Hazeltine had testified, "I have with me the minutes of the regular meeting of the board of directors of the Tucson Realty & Trust Co., held on the 14th day of May 1929. The minutes of that date contain a trust agreement between the Tucson Realty & Trust Co. and Pinal Investment Co. and Daniel H. Shreve." These minutes were offered but the objection of the defendants thereto was sustained. If this is the agreement referred to in the accounts of the Century Investment Trust, it would seem that the note in question was as likely to be that of J. H. Shreve or the Pinal Investment Company as of the Tucson Realty & Trust Company. Consequently, the evidence offered, even if otherwise admissible, did not show that the transaction was fictitious.

The record contains many other assignments of error relating to the admissibility of books of corporations other than those named in the indictment. With reference to these rulings, it will be sufficient to say that in order to make them competent as against the defendants it is essential to show that the defendants made such entries or caused them to be made or assented thereto.

As to the books of the corporations named in the indictment which corporations it is alleged were mere instrumentalities of

the defendants for the perpetration of the fraudulent scheme, it is clear that these books were admissible without other proof than the connection of the defendants with the organization and control of these corporations. It should be said that the government points out that the bill of exceptions does not contain all the evidence, and, consequently, it should be presumed that the ruling of the trial court is correct. This rule is most frequently applied to the denial of a motion for an instructed verdict, where the very question for consideration is the entire evidence. Hall v. United States (C. C. A.) 48 F.(2d) 66. The rule, however, is more general and is thus stated in Ency. Fed. Practice, vol. 6, p. 264, § 2811: "The bill must purport to contain all the evidence whenever all of it is necessary to support the exceptions or any of them or show positively that it contains all the material evidence, or must state positively that the specific lack in evidence was not supplied and was lacking. It is not necessary that it expressly state all the evidence as contended if that may be fairly implied. The absence of such an affirmative statement is not fatal where the recitals in such bill sufficiently show that fact. It is not enough that it purports to contain only the substance of the evidence or substantially all of it."

In 4 C. J., § 2700, it is said: "There is no presumption on appeal that the trial court erred in admitting evidence; but the presumption is, the record not showing the contrary, that the evidence received was competent and was properly admitted."

The rule has been applied where the question was as to the laying of a sufficient foundation for the introduction of evidence as in Goldman v. United States (C. C. A.) 263 F. 340, 344, where it is said: "Again, the record does not purport to contain all the evidence, and the sufficiency of the identification of the rope cannot therefore be a question for our consideration upon the record presented."

In view of the presumptions in favor of the rulings of the trial judge, we have had some doubt as to the sufficiency of the showing in the bill of exceptions that no foundation was laid for the introduction of secondary evidence. However, a careful study of the entire record on appeal justifies the inference that the record does in fact contain all the evidence adduced as a foundation for the admission of secondary evidence as to the contents of the books of the Tucson Realty & Trust Company, and this partly

because the only claim advanced to the trial court as a basis for its admission of this secondary evidence was that the evidence was adduced to prove a negative, and consequently the books were not the best evidence thereof. The ruling admitting this testimony was erroneous and prejudicial and requires a reversal of the judgment.

In view of a new trial, it will be necessary to consider some further assignments of error presented by the appellant relating to the question of jeopardy as to the appellant Perkins and some further questions applicable to all the defendants as to the motions to quash and pleas of abatement to the indictment.

■■■ The defendants moved to quash the indictment and tendered a plea in abatement attacking the indictment on the ground that the grand jurors who returned it were biased and prejudiced. The allegation of the motion and of the plea on the subject of bias and prejudice stated no facts to support the conclusion and were therefore insufficient to raise the issue except as to one juror, Jung. Both plea and motion are accompanied by an affidavit by grand juror Jung to the effect that he was biased and prejudiced by reason of his knowledge of the activities of the defendants in promoting a hotel enterprise in Nogales, Ariz. The motion and plea were dismissed on motion of the United States Attorney. We need not consider the effect of these rulings except as it relates to the retrial of the case. Since the trial, Congress, on April 30, 1934, enacted a statute (18 USCA § 554a) providing that no plea or motion to quash an indictment upon the ground that one or more of the grand jurors finding the indictment were disqualified shall be sustained if it appear that twelve or more jurors, after deducting the number so disqualified, concurred in the finding of said indictment. There is no allegation in the plea or motion heretofore filed that Jung participated in the investigation of the charge or the return of the indictment of the defendants. Consequently, unless an amended plea in abatement is authorized to be filed, such plea is insufficient to raise an issue justifying the quashing of the indictment or the sustaining of the plea in abatement. Pleas in abatement, being dilatory pleas, are not favored. It being conceded that there is sufficient evidence in the record to sustain the charge made in the indictment we see no reason for permitting the filing of an amended plea in abatement.

One other point requires consideration, that is the plea of appellant Perkins that he had been once in jeopardy. The argument in support of this plea is largely based upon the claim that defendant Perkins did not participate in the demurrer to the former indictment which resulted in its dismissal. That he is therefore permitted to contend as he does, that the former indictment stated an offense, and that the offense stated in the present indictment is the same. We are satisfied that the second indictment states a different offense than that attempted to be stated in the first indictment. In view of the conclusion we have reached, it is unnecessary to consider a number of assignments of error relating to the trial of the action and the selection of a trial jury.

With reference to a bill of particulars it should be said that the court was justified in denying the application therefor of the defendants on the ground that it was made too late. In view of the ramifications of this case, however, we think the defendants are clearly entitled to a bill of particulars before the retrial of the case.

Judgment reversed and case remanded for a new trial.