HENRY C. SCHWALL, Appellant, v. THE HIGGINS-
VILLE MILLING CO., Respondent.

Kansas City Court of Appeals, December 18, 1916.

1. CONTRACTS: Recission: Shipment of Flour. This is an action for a breach of contract, wherein the plaintiff purchased certain flour of defendant to be shipped at a future date. The defendant shipped four cars as per contract, but plaintiff did not pay draft until a month after their arrival and storage in railroad warehouse. The defendant refused to ship any more and this action followed. Held, that the case was fairly tried and submitted to the jury.

2. **EVIDENCE: Records: Entries.** An officer of a corporation who has charge and general supervision of the books in his office which are kept in the usual course of business and who has compared the entries in the books with the memoranda from which they were made is a competent witness to identify the books and testify from their contents. The original books of entry being without the jurisdiction of the court.

3. **CONTRACTS: Vendee.** Insolvency of a vendee is a sufficient justification of a refusal of the vendor to ship goods, or of stopping shipments *in transitu.*

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*H. C. Wallace* and *John S. Wise* for appellant.

*Charles Lyons* and *Carl L. Ristine.* for respondent.

JOHNSON, J.—Action for breach of contract by the terms of which defendant, a miller at Higginsville, sold and agreed to deliver to plaintiff a broker in New York, 4750 barrels of flour for delivery as follows: 2000 barrels during February and March, 1912; 750 barrels in the first half of April and 2000 barrels during the whole month of April. The agreed price for the last 2000 barrels was $4.07½ per barrel, and for the remainder, $4.05 per barrel. All of the shipments were to be billed from Higginsville, "lighterage free and inspection allowed" to the Sixtieth street depot in New York, a terminal of the New York Central Railroad. The terms of payment were cash on delivery. Pursuant to this contract and following shipping instructions, defendant shipped four cars containing 250 barrels, each of the value of $886.57, on February 6th, 12th, 14th and 19th respectively, and drew on plaintiff for the respective shipments attaching the bill of lading to the draft. These drafts were forwarded by defendant's bank through a regular channel to a bank in New York City but were not paid by plaintiff until April 16th. On the date of the last of these shipments—February 19th—plaintiff wired

defendant: "Before shipping any more of our orders that you have instructions for, please await our advices and oblige."

No further instructions were given until April 12th, when plaintiff wired an order to ship seven cars more and on April 16th, another order for six cars. On the latter date defendant notified plaintiff of its refusal to fill the orders or to ship any more flour under the contract. The ground of the refusal was the failure of plaintiff to pay the drafts promptly under circumstances which gave defendant reasonable cause to think that plaintiff would refuse or would be unable to pay the purchase price of future deliveries. The contracts gave plaintiff the right to an opportunity to inspect the flour at the Sixtieth street station before his obligation or duty arose to pay the draft for the purchase price of such flour, and it is the contention of plaintiff, supported by evidence, that on account of various delays on the part of the transportation companies, he was not afforded such opportunity with respect to the four cars shipped in February, until just before he paid the drafts, and, therefore, that he was not in default in the performance of his contractual duty to pay cash on delivery.

On the other hand the evidence of defendant shows the cars arrived at the Sixtieth street depot and were unloaded and the flour stored in the railroad company's warehouse at that place where plaintiff, who had been promptly notified of the arrivals, had full opportunity to inspect the flour during a period of more than a month preceding the payment of the drafts which plaintiff delayed paying until he succeeded in reselling the flour.

The evidence of plaintiff tends to show that at the time of the alleged default of defendant the market price of flour in New York had advanced to such an extent that plaintiff would have realized a profit of more than $5000 on the shipments defendant refused to make, while the evidence of defendant tends to show that plaintiff was not damaged. These issues raised by the pleadings and evidence were submitted to the jury, a verdict was returned for defendant and plaintiff appealed.

We are asked to reverse the judgment and remand the cause on the ground of error in the rulings allowing the deposition of Archie Carley to be read to the jury. The witness was the general foreman of the New York Central Railroad Company at the Sixtieth street depot and, as such, appears to have had general charge and supervision over the books and records at that office relating to the arrival of shipments, the time of unloading and storing in the lofts or warehouse, and the notification of the consignees. He produced copies from the books of original entry which he had made himself and they were admitted in evidence. In substance they showed that the four cars arrived at that station, were unloaded, contents stored in the lofts, plaintiff was notified, and that all these events occurred more than a month before the drafts were paid. The entries were made in the books of original entry by different clerks in the usual course of business at the time of the happening of the events and facts recorded. The witness did not write any of these entries himself but before testifying, compared them with the memoranda from which they were entered and found them to be correct. The books themselves would have been admissible in evidence both as aids to the testimony of the witness and on account of their own probative force. [Lyons v. Corder, 253 Mo. l. c. 549; Milling Co. v. Walsh, 108 Mo. l. c. 284, 285; Robinson v. Smith, 111 Mo. l. c. 207.] And since they were in another State and could not be produced in evidence it was proper to receive the copies which the testimony of the witness showed were exactly the same as the original [Wright v. Railroad, 118 Mo. App. 392, and authorities cited.]

The fact that the witness did not write the original entries into the books does not detract from the evidentiary value of his testimony or of the verified copy. Where, as here the entries in the original books of great business concerns are made by different hands, a rule requiring the clerk who made a given entry to testify to its accuracy and authenticity would be impracticable and no good reason could be given for holding that the officer

of the corporation who had charge and general supervision of the books in his office which are kept in the usual course of business, and who has compared the entries in the books with the memoranda from which they were made is not a competent witness to identify the books and testify from their contents.

We do not share the view of plaintiff that the court erred in modifying his instruction numbered 5. There is evidence to the effect that plaintiff was not able to pay the purchase price of the flour but was depending upon reselling it to obtain the necessary funds to pay the drafts. Insolvency of the vendee is a sufficient justification of a refusal of the vendor to ship goods, or of stopping shipments *in transitu.* [Grocery Co. v. Railroad, 138 Mo. App. 352; Schawbacher v. Kane, 13 Mo. App. 126; Garden Co. v. Railway, 64 Mo. App. 1. c. 305.] Other points raised by plaintiff have been examined and are found to be without merit. The case was fairly tried and submitted to the jury.

The judgment is affirmed. All concur.