The **BOLLING COMPANY**, a corporation, Plaintiff-Respondent,

v.

The **BARRINGTON COMPANY**, a corporation, Defendant-Appellant.

No. 32033.

St. Louis Court of Appeals.

Missouri.

Dec. 21, 1965.

Richard O. Funsch, Carter, Bull, Baer, Presberg, Lee & Stanard, St. Louis, for respondent.

TOWNSEND, Commissioner.

In 1955 the parties hereto entered into a contract in which defendant appointed plaintiff its exclusive agent in the procuring of programs to be broadcast over a radio station operated by defendant. Compensation of plaintiff was stated in terms of a percentage of "the net amount of all national business accepted and carried by us originating in the United States" with the exception of "Business originating from the State of Missouri" and "Business which is currently under contract to us." The agreement provided for automatic renewal from year to year unless one of the parties gave the other written notice of cancellation ninety days before October 1 of any particular year.

Plaintiff's amended petition alleges the non-payment of commissions due from defendant over the period expiring with January, 1961, of $8,193.55, for which amount with interest judgment was prayed. Upon the trial of the action plaintiff's only witness testified from plaintiff's Exhibit B; defendant objected to the admission of such exhibit and to the witness testifying therefrom. The exhibit to which objection was made included an accounting period beyond that specified in the petition, namely, from January, 1961, to September, 1961; the whole of the account as shown by the exhibit charged commissions earned of $10,-853.31. Deducting from the latter sum the amount of certain admitted payments, namely, $500, $1000 and $4580.87, the exhibit shows a balance of $4,772.44 due from defendant. The jury returned a verdict of $4,772.44 for the plaintiff.

By the terms of the contract defendant agreed to remit by the 25th of each month all commissions due plaintiff on cash received, together with a detailed statement of all national business done under the

Flynn, Parker & Badaracco, St. Louis, for appellant.

terms of the agreement in the preceding month. After differences as to the balance owed by defendant had developed, in May, 1961, defendant wrote to plaintiff enclosing the payment of $1000 heretofore noted. In the same letter defendant requested plaintiff to send a copy of "your records for the years 1959 and 1960 and also the monthly breakdown for the named years." Plaintiff complied with this request.

Defendant's president testified that defendant had not been able to locate either letters of confirmation sent by plaintiff or contracts with certain sponsors or the compilation sent by plaintiff in response to defendant's request of May, 1961. The witness explained that his office had been moved twice, once within the city of St. Louis and then to Columbia, Missouri and that in the course of such moves all records of transactions with plaintiff had been lost or placed in storage in some unknown depository.

The testimony on the point is unprecise, but it appears that the method of placing an order for a particular program was as follows: Plaintiff would call upon an advertiser or an advertising agency and "sell" the advertiser a schedule or campaign, quoting the rate previously published by defendant. Plaintiff would then communicate with defendant's president and secure approval of the rate and the time of broadcast. Thereafter plaintiff would confirm the sale of the time by a letter form of confirmation. Two copies of such confirmation letters were sent to defendant, one bearing a notation "Return Now! Approved date ———. By ———." The latter copy would be returned to plaintiff after it had been initialled by defendant's officer and the other copy retained for defendant's files.

Plaintiff's Exhibit B consisted of a sheaf of sheets, each denominated Monthly Statement and showing, by months, programs broadcast by WEW together with the gross billing therefor and plaintiff's commission thereon. Plaintiff's witness testified that "These are a recapitulation of the monthly statements that we sent to The Barrington Company, WEW, for monies owed us." At another point plaintiff's witness stated that "these records" were made up in response to defendant's letter of May 10. And "we even tried * * * be helpful, to make up the records from our book * * * We went to our books and records. We got every single account that had been broadcasted on WEW and capitulated them, wrote them down." Q: "Did you have records at your company that showed the amount of time that was in fact covered by The Barrington Company?" A: "Yes." Q: "Where did you get these records?" A: "From the confirmations that Mr. Barrington signed."

From this testimony it is impossible to determine the exact sources from which the offered information contained in Exhibit B was derived; one can only speculate. One portion of the testimony might lead to the conclusion that plaintiff rendered monthly statements to defendant and that Exhibit B is simply a compilation of copies of such statements so rendered. Another bit of plaintiff's testimony might indicate that the exhibit came into existence only after May 10, 1961, and that each sheet therein was a summary of transactions with WEW for a particular month, the source of which was the various advertisers' accounts found in plaintiff's books. Another speculative venture might lead one to the belief that the exhibit was simply a recapitulation of the letters of confirmation initialled by defendant's officer and returned to plaintiff. It is evident that the sheets of Exhibit B are either copies of some anterior records or that the entries on each such sheet are derived piecemeal from other records. In any event they are not original records.

▪ It is clear that the exhibit in question was not made admissible by the Uniform Business Records as Evidence Act. (Section 490.680, RSMo 1959, V.A.M.S.). Being copies or summaries of antecedent records the various sheets of the exhibit were not made in the regular course of busi-

ness and obviously they were not made at or near the time of the various acts, events or conditions which they purport to record.

Throughout the presentation of plaintiff's case defendant objected to the admission of Exhibit B and to any testimony based thereon and was repeatedly overruled. Defendant maintains that the best evidence rule required the rejection of Exhibit B and any testimony based thereon and that error was committed by the trial court in permitting its admission.

While the term "best evidence" may have anciently embodied a broader concept, modern authorities have found that at the present time, except for some infrequently found fringe areas, the term comprehends on the whole a very restricted area—but one highly pertinent to the instant case. Thus, Wigmore, in reviewing the uses to which the term has been put historically, says: "(1) Chiefly, and usually, the phrase ['producing the best evidence'] was employed for the rule that the terms of a document must be proved by the *production of the document itself,* in preference to evidence about the document. This is the use that has longest survived, and its illustrations are too numerous to need citation." 4 Wigmore Treatise on Evidence, Section 1174 (Emphasis that of the author). And McCormick concludes that "The only actual rule that the 'best evidence' phrase denotes today is the rule requiring the production of the original writing." McCormick, Handbook of the Law of Evidence 409.

Both the ancient character of the rule and its modernity are well illustrated by Miller v. John Hancock Mut. Life Ins. Co., Mo.App., 155 S.W.2d 324, 326, where it is said: "It has been a uniform rule of evidence and so announced by our Supreme Court as early as the year 1830 in the case of Benton v. Craig, 2 Mo. 198, that 'A witness cannot testify to the contents either of a record or of any written instrument, unless its absence be accounted for.'" The occasions and the methods by which the absence of the writing may be accounted

for are limited and the established standards are strict. Thus, if the original writing has been lost, secondary evidence as to its contents is admissible. Scrivner v. American Car and Foundry Co., 330 Mo. 408, 50 S.W.2d 1001; Triplett v. Wyatt, Mo. App., 360 S.W.2d 386. Or, if the writing has been destroyed, such secondary evidence is proper. Nibler v. Coltrane, Mo., 275 S.W.2d 270, 274 (but with a caveat if destruction was by the party seeking to use secondary evidence. See In re Estate of McCollum, Fla., 88 So.2d 537). Likewise, if the writing is outside the jurisdiction and not within the possession or control of either party, testimony as to its contents is proper. Thurman v. St. Louis Public Service Co., Mo., 308 S.W.2d 680; Fuller v. Robinson, 230 Mo. 22, 130 S.W. 343; Schwall v. Higginsville Milling Co., 195 Mo.App. 89, 190 S.W. 959; Locke v. Woodman, Mo.App., 225 S.W. 352. Or if by the laws of the other jurisdiction the writing may not be removed from that state, the proponent may so prove its contents. Citizens State Bank v. Ferson, Mo.App., 208 S.W. 136.

Where records or accounts are lengthy and complicated and the original records are in the courtroom, an accountant or auditor may testify as to summaries of the pertinent items which he has prepared. Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43; State ex rel. Sullivan County v. Maryland Casualty Co., 334 Mo. 259, 66 S.W.2d 537; Masonic Mut. Benefit Society v. Lackland, 97 Mo. 137, 10 S.W. 895; State v. Findley, 101 Mo. 217, 14 S.W. 185. And see Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. R. Co., 80 F.2d 32, 102 A.L.R. 688 (C.C.A. 8th); State ex rel. State Highway Commission v. Cone, Mo., 338 S.W.2d 22.

Here, the Court put to plaintiff's president the question: "Do I understand your original records are in your office in New York City?", to which the witness responded: "That's correct." Therefore we do not have here a situation where the ab-

sence of the originals is appropriately "accounted for". They have not been lost or destroyed. The fact that the originals are outside the state has no significance here; the pursuing party has for its own reasons, perhaps of convenience, deliberately chosen not to put them into evidence and seeks to make its case with a type of evidence which plainly is not the best evidence, although it has unfettered control over such best evidence—the originals. Plaintiff is not aided by the rule relating to summaries of voluminous and complicated records. The originals were not made available to defendant for the purpose of cross-examination. More importantly, plaintiff's own testimony leaves uncertain the identity of the original records from which Exhibit B was compiled and so leaves unsatisfied the requirement that, in any event, to make secondary evidence admissible the proponent must show that the asserted originals would have been competent evidence. Here the best evidence rule was honored in the breach. We hold that Exhibit B was not admissible.

■ Plaintiff's final defense of Exhibit B is in essence a claim that defendant waived its objection to the exhibit because defendant, after its objection had been overruled, adverted to some portions of the exhibit in the course of defendant's testimony. The circumstances were these: A controversy clearly existed as to whether plaintiff was entitled to compensation for certain programs broadcast by defendant; defendant contended that these programs were not "commissionable" under the terms of the contract. In addition, defendant denied the liability alleged in Exhibit B for programs broadcast after defendant's sale of the station. Deducting the charges made in Exhibit B in respect of such disputed programs and assuming the correctness of the balance of the exhibit up to January, 1961, defendant would admit a balance owing by it of $668.21. But the basis of any such qualified admission is made clear by the witness' statement that "This is based on a calculation on the figures which plaintiff has submitted and reconciling any claims that we have." Explaining the $668.21 amount at a subsequent point, defendant's witness stated that, in arriving at such amount, "We started with the amount that claimant is making at the present time and we deducted from that the sums" that were charged in the exhibit for the controverted programs and those for a period after defendant sold the radio station in January, 1961. These statements of defendant's president were obviously based upon the hypothesis that if the charges shown on Exhibit B are correct (after deducting the controverted programs and period) a certain balance is owed by defendant. But the computations by which defendant arrived at such result were purely contingent and based upon the validity of the assumption that the charges were correct. Defendant's utilization of certain portions of Exhibit B solely for the purpose of making such contingent computations cannot be regarded as an acceptance of the rest of the account shown by Exhibit B. Not having the original records before it, defendant had no way of checking the accuracy of the charges made. Under such circumstances, we do not regard defendant's references to Exhibit B as a waiver of its objection. At another stage, defendant's counsel asked defendant's only witness the amount of commission *charged in Exhibit B* in respect of each controverted program. The witness thereupon stated his computation as to each. From this it is difficult to see how defendant adopted any part of Exhibit B as its own. As that exhibit was going to the jury, this testimony simply pointed out the inclusion therein of alleged liability for items which was otherwise disputed by defendant. Confronted by a fact and not a theory, defendant simply called attention to that inclusion.

For the reasons stated it is clear that judgment must be reversed and the case remanded. Hence alleged errors in instructions to the jury need not be here considered; they will no doubt have the close

attention of counsel upon a retrial of the case.

Judgment reversed and case remanded.

PER CURIAM.

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is reversed and the case remanded.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.