**STATE of Missouri, Respondent,**

v.

**Daniel PEEL, Appellant.**

**No. 55580.**

Supreme Court of Missouri,
Division No. 2.

June 28, 1971.

John C. Danforth, Atty. Gen., Craig A. Van Matre, Asst. Atty. Gen., Jefferson City, for respondent.

James Polsinelli, Romano, Shapiro & Polsinelli, Kansas City, for appellant.

PRITCHARD, Commissioner.

Appellant was convicted by the verdict of a jury of uttering a forged, counterfeit T.W.A. check in the amount of $176.97, allegedly cashed by C. M. McKeon, d/b/a Kelly's. The principal issue involved is whether the court erred in admitting into evidence a photostatic copy of another like check which was cashed at the K. C. Truck Terminal restaurant in Kansas City, Kansas, which copy was received in evidence as State's Exhibit 6. Appellant's grounds of objection were (A) the copy of the check was not the best evidence; (B) no foundation was laid for the admission of secondary evidence; and (C) the copy of the check was so illegible that appellant was deprived of his Sixth Amendment right to cross-examination.

The jury found appellant's guilt but was unable to agree on his punishment, and the

court set the same at four years imprisonment in the Department of Corrections.

The facts are these: Since 1964 Charles McKeon had operated Kelly's Restaurant and Cocktail Lounge in Riverside, Missouri. Sometime in October, 1969, he cashed State's Exhibit 4, a check for $176.-97 purporting to be drawn by Trans World Airlines, Inc., dated August 20, 1969, and payable to one Jack Collins. This check was endorsed by McKeon, and was later returned to him by the bank "payment stopped." At the time McKeon cashed the check the person to whom he paid the money signed the name Jack Collins on it, using McKeon's pen, and produced a Milgram Grocery I.D. card and a T.W.A. employee's I.D. card showing the name Jack Collins for identification. McKeon had seen this person around Riverside off and on for some seventeen years. After cashing the check McKeon went outside and got the license number of the car which "Collins" and two other men were driving, and later turned that number over to the police with a description of Collins. McKeon pointed out appellant in court as the man for whom he cashed the check. On cross-examination McKeon testified that after reporting the matter he was called by the Riverside police to identify a picture of a man the police had picked up trying to cash an identical check at Kern's Tavern in Riverside. Then McKeon went to the police station and identified appellant as the man who cashed the check.

Gary Hohimer was Chief of Police of Riverside on October 30, 1969, when he observed appellant in the parking lot of Ole Kerns Tavern. Appellant did not have a license plate on his car as he drove off and Chief Hohimer followed and stopped him. Corporal Campbell arrived at the scene and started talking to appellant who represented himself as Daniel Peel. Chief Hohimer identified State's Exhibit 1 as the check he found in the front seat of appellant's car, and which he saw as he was looking through the open front door. Exhibit 1 is a check identical to State's Exhibit 4, and

is payable to Jack Collins. With Exhibit 1 Chief Hohimer found a Carpenter's Health and Welfare card with the name Daniel Peel on it, and in appellant's billfold he found an International Brotherhood of Teamsters card with the name Jack Collins on it.

W. J. Breitenstein testified that as manager of cash disbursements or control for T.W.A., signing and distributing checks, State's Exhibit 4 was not issued by T.W.A., and that there was no Jack Collins on its payroll. About 109 counterfeit checks had been passed in the Kansas City area made out to various persons, but about 10 were made out to Jack Collins. Exhibit 4 was a good likeness to T.W.A.'s checks.

Officer Robert Campbell first observed appellant in the Kern's Tavern parking lot stooped behind a car attempting to take off the license plate. About thirty minutes later appellant was arrested for having no license plate on his vehicle. On cross-examination it was brought out that Campbell called McKeon who came to the police station and was shown a picture of appellant taken a short time before. He told McKeon that appellant had tried to cash a check at Kern's Tavern, and (on cross-examination) read into evidence the statement of Nadine Henry, employee of Kern's, that she was requested on October 30, 1969 to cash a T.W.A. check for $176.-97 made payable to Jack Collins, but did not cash it because they did not have enough money to do so.

Appellant denied he cashed the check at Kelly's Restaurant or attempted to cash one at Kern's Tavern. He knew State's Exhibit 1 was in the front seat of his car, but figured one of the men he was with dropped it from his pocket. He claimed to have just purchased the car he was in and produced a check for $175.00 loaned to him by Florence Gulley (whom he was with all day October 15, 1969) therefor, and a Kansas certificate of title for it. He was aware of who Nadine Henry was. Appellant, on cross-examination, denied ever attempting to cash a T.W.A. check in Kan-

sas City, and also denied attempting to cash a T.W.A. check at the Kansas City, Kansas, Terminal restaurant.

In rebuttal Nadine Henry identified appellant as the person who tried to cash the T.W.A. check at Kern's Tavern on October 30, 1969. Also on rebuttal, Gordon E. Armstrong was offered as a witness for the state. Appellant objected to his testimony because his name was not endorsed on the information as a witness, which objection was overruled. Armstrong testified he was assistant manager of K. C. Truck Terminals (a truck stop restaurant) in Kansas City, Kansas, and two weeks before Halloween he cashed a T.W.A. check made out to Jack Collins, and positively identified appellant as being the person who presented the check to him. Armstrong did not know appellant by name, but recognized him as being a steady customer of the restaurant. Armstrong produced a photostatic copy of the check (Exhibit 6) and testified that the "main check" was in the main office in Abilene, Texas. He paid $176.97 for the check which was returned by the bank, and Western Marketing, Inc., which owned and leased K. C. Truck Terminal restaurant, was out the money for cashing the check. Appellant objected to Exhibit 6 on the ground that it was not legible, the original was the best evidence, and it had no bearing on the issue in the case.

■ The general rule is as appellant states: "[T]he original writing is the best evidence, and a copy is inadmissible." 32A C.J.S. Evidence § 813, p. 154; Bolling Company v. Barrington Company, Mo. App., 398 S.W.2d 28, 30 [1], 31 [2–5]; State v. Coleman, Mo., 441 S.W.2d 46, 51 [8, 9]. There are, however, exceptions to the general rule and one of these is that the primary evidence (the original of the check here) is out of the jurisdiction of the court and beyond the reach of its process. 32A C.J.S. Evidence § 831, p. 176; Thurman v. St. Louis Public Service Company, Mo., 308 S.W.2d 680, 688 [12, 13]. "The general rule is that 'where an instrument in writing is neither within the jurisdiction of the court *nor within the control of either of the parties to the suit,* secondary evidence of its contents is admissible.' Fuller v. Robinson, 230 Mo. 22, 130 S.W. 343, 354 [15]." (Emphasis added.) Here, Armstrong testified that the original of State's Exhibit 6 was in the main office of his company in Abilene, Texas. Armstrong's company is not a party to this action—the State of Missouri was plaintiff and appellant was the defendant. In the Bolling Company case, supra (loc. cit. 398 S.W.2d 32), relied upon by appellant, the original records were in the *plaintiff's* New York City office, as testified to by plaintiff's president, and it was held that secondary evidence was not admissible because "the pursuing party has for its own reasons, perhaps of convenience, deliberately chosen not to put them into evidence and seeks to make its case with a type of evidence which plainly is not the best evidence, *although it has unfettered control over such best evidence*—the originals." (Emphasis added.) The Bolling case is to be distinguished because here the state did not have unfettered control over the original $176.97 check—it was in the possession of a third party outside the jurisdiction of the court. See 32A C.J.S. Evidence § 830, p. 175. The state laid a sufficient foundation for the admission of Exhibit 6, which document was material and relevant concerning appellant's credibility in denying cashing the check at the K.C. Terminal restaurant, and was also material and relevant as bearing on appellant's intent to commit the crime charged, it being one of three checks, all cashed or attempted to be cashed in the latter part of October, 1969, as the evidence shows. See State v. Smith, Mo., 431 S.W.2d 74; and State v. Burnett, Mo., 429 S.W.2d 239, for the exceptions to the rule of inadmissibility of proof of offenses other than that charged.

■ The illegibility of the photocopy of the check goes merely to the weight of Armstrong's testimony and the evidence,

which was for the jury. It is discernible from the photocopy that it is a T.W.A. check for $176.97, payable to Jack Collins, and is endorsed in that name.

 Witness Armstrong was a rebuttal witness for the state, and thus it was unnecessary to have endorsed his name on the information as a witness. He was specifically offered to rebut appellant's alibi testimony and his testimony denying cashing a check in the Kansas City, Kansas, Terminal restaurant. State v. Washington, Mo., 383 S.W.2d 518, 524 and cases cited answer appellant's contention that the court erred in permitting Armstrong to testify. No abuse of the court's discretion is shown, State v. Niehoff, Mo., 395 S.W.2d 174, and Point II is overruled.

■ The last point is that the court erred in permitting witness McKeon to make an in-court identification of appellant, the matter being asserted as plain error affecting substantial rights under Supreme Court Rule 27.20(c), V.A.M.R., and within United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. The pre-trial identification of appellant (a photograph and by observation) brought out on cross-examination of McKeon does not offend the Wade and Gilbert cases or Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. There was no suggestive procedure employed by the police, and although appellant did not have counsel when McKeon viewed him the "totality of the circumstances" clearly shows that McKeon's in-court identification had a source independent of the police station confrontation. He had seen appellant in Kelly's Restaurant on occasions for many years although he did not know him by name. Appellant was directly in McKeon's presence when he endorsed the check using McKeon's pen. No constitutional error appears, and the last point is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

DONNELLY, P. J., MORGAN, J., and HENLEY, Alternate Judge, concur.

FINCH, J., not sitting.