STATE of Missouri, Respondent,

v.

Michael B. PERRYMAN, Appellant.

No. 9665.

Missouri Court of Appeals,
Springfield District.

Feb. 26, 1975.

Motion for Rehearing or to Transfer to Supreme Court was Denied March 14, 1975.

Rehearing Denied April 14, 1975.

John C. Danforth, Atty. Gen., K. Preston Dean II, Clarence Thomas, Asst. Attys. Gen., Jefferson City, for respondent.

Donald L. Clough, Springfield, for appellant.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

TITUS, Judge.

Tried under the habitual criminal law (§ 556.280)[1], defendant was jury-convicted of second degree burglary (§ 560.070) and stealing. § 560.156. He was sentenced by the court to seven years for burglary [§ 560.095(2)] and three years for stealing (§ 560.110, subd. 1) under a pronouncement the two sentences were to run consecutively. § 560.110, subd. 2. The sufficiency of the evidence to sustain the conviction is not questioned in this appeal. Therefore, we recast only the facts necessary to determine the four points relied on by defendant.

I.

Defendant first contends the trial court erred by issuing, ex parte and without notice to defendant, a writ of habeas corpus ad testificandum (Rule 25.16) and "in refusing to grant [defendant] a continuance

---

1. References to statutes and rules are to RSMo 1969, V.A.M.S., and to Missouri Supreme Court Rules of Criminal Procedure, V.A.M.R.

to inquire into the testimony of Paul Stevens, the witness produced by virtue of said writ, because [defendant] was materially prejudiced in the presentation of his defense by such refusal."

■ Facts pertinent to the first point are that six days before trial the state, without notice to defendant, applied for a writ of habeas corpus ad testificandum which the court issued forthwith. The name of the intended witness (prisoner Stevens) had not been endorsed on the information. On the morning of trial, defense counsel stated he had not heard of the matter until "last night . . . and I had no notice that [Stevens] was going to be a witness. We are not prepared to go to trial, didn't even have time to prepare last night a written application for continuance when I found out this. I have found no testimony to meet his testimony." When the prosecutor explained "we intended to use [Stevens] as a rebuttal witness" the trial court commented that "under those circumstances if it is necessary to use him as a rebuttal witness . . . I will give you time to interview him." To this defendant's counsel replied, "All right," and when asked "Are you ready to proceed?", defendant's lawyer answered, "Yes, sir." [2]

At the conclusion of the state's evidence-in-chief, the trial court called a recess advising defense counsel that "Mr. Stevens should be available to you . . . if you want to talk to him." Defendant's lawyer proceeded to do so. However, when defendant rested and the state undertook to call Stevens as a rebuttal witness, the court agreed with defendant that the testimony of his lone witness had produced nothing to rebut. Consequently, Stevens did not appear as a witness in the cause.

■ The answer to defendant's first point on appeal lies in the fact that he at no time requested the court for a continuance or for more time to prepare for trial. Hess v. United States, 254 F.2d 578, 585[7] (8th Cir. 1958). A defendant may well say he is not ready for trial and has not had time to prepare a written application for a continuance, but such mouthings do not equate to a request for a continuance. Moreover, when defendant learned the witness would be used only in rebuttal and that he would be given an opportunity to interview the proposed witness before he was called, it will be presumed that defendant thereafter dispensed with any objections or misgivings he may have harbored when he thereafter went to trial without further objection upon his assurances that the court's arrangements were "All right" and that he was ready to proceed. State v. Gamble, 108 Mo. 500, 505, 18 S.W. 1111, 1112[2] (1892). Whether continuances in criminal cases are to be granted vel non rests within the sound discretion of the trial court. State v. Le Beau, 306 S.W.2d 482, 486[5] (Mo.1957). And when that discretion has not been addressed, it cannot be said that it has been abused. Furthermore, if a trial court's action in permitting the last minute endorsement of a witness is not error because the witness' testimony was not adverse to defendant [Humphrey v. State, 502 S.W.2d 251, 253[4] (Mo.1973)], it is even more certain that issuance of a writ of habeas corpus ad testificandum, whether rightly or wrongly, for a witness who did not testify could not work to the prejudice of a party. State v. Thost, 328 S.W.2d 36, 38[3] (Mo. 1959). "Error without prejudice, if there was error here, affords no basis for relief by an appellate court." State v. Phelps, 478 S.W.2d 304, 310[18] (Mo.1972).

II.

Secondly, defendant alleges the trial court erred "in admitting over objection . . . testimony of state's witness Donald E. Smith regarding the identification

2. It is not necessary that the names of rebuttal witnesses be endorsed on the informa-

tion. State v. Peel, 469 S.W.2d 33, 36 [3] (Mo.1971).

of body hairs because said witness was not qualified to testify as an expert on such matters."

At the time Smith testified, he had been employed for ten months as director of the crime laboratory of the Springfield Police Department. Smith had "a BS degree in sero-chemistry . . . a Masters degree and Bachelor of Science of Administration." In addition, he had received training "from the Bureau of Narcotic and Dangerous Drugs School . . . in Washington, D.C." and had 85 to 90 work hours in "a course in chromatography, technique for forensic chemistry, Georgetown University." Smith stated he was familiar with and had previously "testified as an expert . . . concerning the gas chromatography unit," through which it is "possible to compare paint samples or finger nails or hairs," for example. Prior to his crime laboratory work, Smith had 13 years' experience in food processing plants as an analyst, dry chemist, quality control manager, chemist and laboratory supervisor.

As a state's witness, Smith testified that by use of a gas chromatography unit he had run tests (1) on hairs taken from socks found in a field adjacent to the burglary site and hairs taken from socks removed from defendant after his arrest, and (2) on hairs from the field socks and a hair taken from defendant's shirt. He opined without objection regarding the first tests that although the hairs were quite similar, it wasn't a perfect match and the tests were inconclusive. When Smith was asked if hairs from different parts of the same human body "register differently on this type machine?", he answered "Yes, they do", whereupon defense counsel stated: "I object to that and ask it be stricken. The man hasn't testified as to qualification in training or medicine. I think it is beyond the scope of his qualifi-

cations he set out for the jury." The objection was overruled and Smith related that he had taken hairs from different parts of a human body and "although they may possess many of the [same characteristics], they will not perfectly match." In testifying regarding the second test, Smith again without objection stated the "samples had identical quantative hydrocarbon profiles, on the first 40 organic peaks on the gas chromatograph. When I mean quantative I don't mean the same quantity but the compound was there in each fragment." Following this Smith was asked to give his opinion whether the shirt hair and those taken from the field socks came from the same human body. Defendant's lawyer interrupted: "I make the same objection as to his qualifications I made previously." When this objection was overruled, Smith said, in his opinion, the hairs came from the same human body.

▪ As explained by Smith (among other explanations) "[g]as chromatography is an analytical tool used by chemists to help measure particular organic compounds, that is to separate out particular organic compounds and measure them quantitatively." Since it seems apparent the use of and tests results taken from such a tool are not matters within the general understanding or knowledge of men generally, there could be no objection in permitting one possessed of special skill and scientific knowledge to express an opinion in the matter (23 C.J.S. Criminal Law § 858(2), at p. 380) and defendant has made no such objection in this case.[3] It is well to additionally note that neither at trial nor here, does defendant claim the gas chromatography unit, as a method of scientific analysis, has not been accepted by the scientific community, that it is not an accurate testing device, or that an analysis properly obtained from such a unit is not acceptable by the courts.

---

3. On voir dire examination defendant questioned the panel regarding the anticipated testimony of Smith. None of the people who served on the jury professed any particular knowledge of chemistry or a science related thereto.

Whether expert opinions are permissible on a given subject and whether a witness qualifies as an expert on that subject, are questions ordinarily to be determined by the trial court in the exercise of sound discretion. The trial court's action in admitting expert testimony is reviewable on appeal on the issue of the abuse of that discretion and its judgment on the matter should not be reversed unless it is found to be prejudicially erroneous. State v. Vineyard, 497 S.W.2d 821, 828[15, 16] (Mo.App.1973); State v. Barker, 490 S.W.2d 263, 273[14] (Mo.App.1973). Furthermore, if reasonable men can differ about the propriety of the court's action, it cannot be said its discretion was abused. Kasper v. Helfrich, 421 S.W.2d 66, 69[4] (Mo.App.1967).

Specifically, defendant's first objection was that Smith was not qualified to know that hairs from different parts of the same body registered differently when tested on a gas chromatography unit. Technically this would not be contained in the point relied on because it states only a doubt as to Smith's ability regarding identification of body hairs. Moreover, when the objection to Smith's opinion as to the result of the second test was confined to "the same objection as to his qualifications I made previously," the implication was that since the witness was unqualified to state there was a difference in hairs from different parts of the same body, he was also not qualified to conclude the second tested hairs came from the same body. Disqualification in the first area would not necessarily serve to disqualify the witness in the second. But all finicalness aside, the record reveals that Smith had qualified for various degrees in chemistry, had 13 years' experience in food processing plants as a chemist, had 85 to 90 work hours of special training in the use of chromatography, had worked ten months as director of a metropolitan police crime laboratory and had previously testified as an expert regarding tests conducted with the aid of the gas chromatography unit. With this back-ground and experience, we do not find the admission of Smith's opinion testimony relative to the hairs tested an abuse of discretion on the part of the trial court. The most that may be said favorable to defendant is that reasonable men might differ on the propriety of the court's admission of Smith's expert testimony and opinions. This being so, we cannot say the trial court abused its discretion and we therefore rule point two against defendant.

### III.

Defendant's third point: "The [trial] court committed error in refusing to grant the defendant a mistrial when the assistant prosecuting attorney . . . made statements to the jury that the defendant had a 'burden of proof' to disprove the state's case and that the admonition of the court to the jury to disregard such argument was not sufficient to remove the prejudice of the argument from the jury's mind."

In the initial portion of the state's closing argument, this occurred: Assistant Prosecuting Attorney: "The law is such you must find defendant guilty beyond a reasonable doubt. What does reasonable doubt mean? Reasonable doubt means a substantial doubt. That means if you were to acquit [defendant] you would have to have substantial doubt in your mind as to why he was there. That means the defense would have to create a substantial doubt." Defendant's Attorney: "May I approach the bench? The Court: Yes." Defendant's Attorney: "At this time I move the Court for a mistrial. The Prosecuting Attorney at this stage says defendant has the burden of proof, which he doesn't have. No instruction from the Court could take it from the jury's mind. I have no further proof. The Court: The objection to the statement would be sustained. The motion for mistrial is overruled." Defendant's Attorney: "Does the Court intend to instruct the jury to disregard it? The Court: The jury will disregard the statement of the Prosecuting Attorney that there is a burden on the de-

fendant. That statement is stricken and the jury will disregard it."

When the state argued "the defense would have to create a substantial doubt" and the defense attorney objected thereto because the state "says defendant has the burden of proof," it might appear at first blush that defendant's lawyer missed his mnemonic hook. However, recognizing the court charged the jury that the burden of proving defendant's guilt beyond a reasonable doubt rested with the state and defined reasonable doubt as a substantial doubt, and considering that the prosecutor, in equating reasonable doubt with substantial doubt, undertook to obligate defendant "to create a substantial doubt," we have no difficulty in viewing the argument as an umbratic suggestion of a requirement that defendant must account for or explain his actions or conduct or, in other words, that defendant had the burden of disproving or creating a substantial doubt as to one of the constituent elements of the cause.

To this third point defendant cites 23A C.J.S. Criminal Law § 1081; State v. Allen, 363 Mo. 467, 473, 251 S.W.2d 659, 662 [4] (1952); and State v. Tiedt, 357 Mo. 115, 119–120(1), 206 S.W.2d 524, 526–527 [1–3] (banc 1947), all of which recite the overall duty of the prosecuting attorney to be fair and impartial in the trial of a person accused of crime. There is no question of such pronouncements or the impropriety of the assistant prosecutor's argument, supra. The real question is whether the trial court, although it sustained the objection to the argument, ordered it stricken and twice instructed the jury to disregard it, erred in overruling the motion for a mistrial.

Only extraordinary circumstances should prompt a trial court to grant a motion for a mistrial. State v. Barnes, 517 S.W.2d 155, 166[16] (Mo. App.1974). Whether a mistrial is to be declared vel non, rests principally within the discretion of the trial judge who observed the incident in context and who, better than we, can evaluate the prejudicial effect of the erroneous argument on the jury. State v. Jenkins, 516 S.W.2d 522, 527[15–17] (Mo.App.1974). Not every instance of a prosecuting attorney exceeding the limit of legitimate argument is cause for declaring a mistrial. State v. Raspberry, 452 S. W.2d 169, 173[7] (Mo.1970). Although the complained of portion of the prosecutor's argument was erroneous, it was not extreme, it did not excite prejudice nor exhort passion—it was simply a misstatement of the law on the burden of proof or defendant's duty "to create a substantial doubt" which the trial court promptly and unequivocally struck and instructed the jury to disregard. Under the circumstances presented, we cannot as a matter of law hold the trial court abused its discretion in refusing to declare a mistrial.

## IV.

Defendant's fourth and last point: "That the prosecuting attorney . . . erroneously stated to the court that the defendant had been arrested for incest and possession of burglary tools, thereby causing the court to impose a more severe sentence than would otherwise have been given."

Following verdict and after the jury had been discharged, the court indicated a preference to "fix" punishment "before the Motion for New Trial is filed." In compliance therewith, the prosecuting attorney proceeded to "ask the Court to give the maximum [punishment] on both counts and assess them consecutively," and, inter alia, told the court "[w]e show these three felony convictions and show arrests for felonies involving matters such as incest, forgery, burglary on probably 10 different occasions," etc. Defendant made no objection to these representations before the court announced it would "fix the defendant's punishment at a term of seven years on the charge of burglary and a term of three years on the charge of stealing, said

terms to run consecutively." [4] Neither did defendant complain of this procedure or anything represented by the state in his motion for a new trial.

 To preserve a point for appellate review, a timely objection must be made at trial [State v. McCreary, 504 S. W.2d 132, 136[11] (Mo.App.1973)] and presented in the motion for new trial. State v. Spica, 389 S.W.2d 35, 50[22] (Mo.1965), cert. denied, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312. Defendant did neither. Hence the point is not before us for review [State v. Burns, 328 S.W.2d 711, 714[7] (Mo.1959)] because the trial court will not be held to have committed error for reasons not presented to it. State v. Crow, 486 S.W.2d 248, 257[25] (Mo.1972). Moreover, no evidence was adduced controverting the representations of the state concerning defendant's "rap sheet from juvenile to adult," and there is nothing of record to indicate the trial court relied on the state's recountings in arriving at the sentences imposed. A bare assertion in an appellant's brief that the information conveyed by the prosecutor was erroneous cannot be considered on appeal when it has no factual foundation and is not supported by any evidence contained in the transcript [State v. Freeman, 489 S. W.2d 749, 753[12] (Mo.App.1973)], and defendant's asseveration that the trial court considered untrue presentencing information cannot be sustained upon assertions found only in his brief. Griffith v. State, 504 S.W.2d 324, 330[9] (Mo.App. 1974). The maximum for second degree burglary is ten years [§ 560.095(2)]; the maximum for stealing is five years. § 560.110, subd. 1. Since the sentences imposed were seven and three years respectively, it does not appear the trial court was necessarily influenced or in any way

prejudiced toward the defendant by the state's representations.

The judgment is affirmed.

All concur.

---

4. The motion for new trial was filed before judgment [Rule 27.20(a)], and after it had been overruled, the defendant appeared in person and with counsel, was afforded allocution, and the court rendered judgment and

pronounced sentence thereon as it indicated it would do immediately after verdict. Rule 27.09; State v. Robbins, 481 S.W.2d 618 (Mo.App.1972).