**STATE of Missouri, Respondent,**

v.

**Marlon HOOKER, Appellant.**

No. KCD 27848.

Missouri Court of Appeals,
Kansas City District.

March 29, 1976.

Motion for Rehearing and/or Transfer
Denied May 3, 1976.

Thomas M. Larson, Public Defender, R. William Bloemker, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

Appellant (hereafter defendant) was tried before a jury for the crime of rape. The jury returned a verdict of guilty but was unable to agree upon the punishment and the defendant was sentenced by the court to a term of twenty-five (25) years imprisonment. From this judgment and sentence, he appeals.

Defendant does not challenge the sufficiency of the evidence but raises two assignments of error upon which he seeks this court's mandate of reversal. *First*, he asserts error by the trial court in failing to sustain his objection to a comment by the assistant prosecuting attorney in his closing argument. *Second*, he asserts error by the trial court in failing to sustain his objection to the presentation of certain testimony offered by the state in rebuttal. A resolution of these points requires a summary of the facts.

The prosecutrix testified that at about 5:00 p. m. on August 26, 1974, she was alone at her residence at 1319 Van Brunt in Kansas City, Jackson County, Missouri; she heard a noise on her front porch which she presumed was made by the mailman; she opened the door and at first saw no one; and suddenly, a man appeared with a small handgun, threw open the screen door, grabbed her by the arm and shoved her into the house. The man checked the house for other occupants, pushed her into a bedroom, and ordered her, at gunpoint, to undress. The intruder then undressed, ordered her onto a bed, forced her to have sexual intercourse with him, dressed and left the premises. While her assailant was in the process of undressing before the rape, he held the gun in his left hand and steadied his balance with his right hand on the surface of a dresser near the bed.

After the man left, the prosecutrix called the police and upon their arrival gave them a full description of her attacker. The next day, she identified the defendant in a lineup at police headquarters, and at the trial she made a positive, unequivocal in-court identification. Investigating police officers were able to obtain three latent fingerprints from the dresser in the bedroom, which were identified at trial as being those of the defendant.

The trial of this case commenced on January 6, 1975, and approximately 30 days prior to that date, defense counsel advised the state that the defendant intended to rely upon an alibi defense, in compliance with Rule 25.34(A)(5), effective July 1, 1974.

In support of this defense, the defendant's mother, Mary Ann Hooker, testified that he was in her company on August 26, 1974, the day of the crime, from 3:22 p. m. to 6:10 p. m.; that at precisely 3:22 p. m. she, the defendant, her daughter, Rhonda Hooker, her other son, Donald Hooker, and a woman friend, Willa Moore, left her residence at 1816 Benton Boulevard by automobile for the purpose of going to Macy's department store at 10th and Main in downtown Kansas City; en route, she stopped at a filling station for gasoline;

thereafter, dropped her passenger friend at the Board of Education Building at 12th and Oak, also in the downtown area; and, then drove to a parking lot behind Macy's, parked the car and proceeded with the defendant and her daughter to Macy's shoe department. She stated that she purchased shoes for the defendant and her daughter, as evidenced by a charge account sales receipt. While at Macy's at 5:00 p. m., she introduced the defendant to a Mr. Holloway, whom she met then by chance and who was a friend of hers. At 5:30 p. m., she picked her friend up at the Board of Education Building and proceeded back to her home on Benton Boulevard, arriving there at 6:10 p. m., her son, defendant, still in her company.

Rhonda Hooker, the defendant's sister, substantially corroborated this testimony. Willa Moore testified that she was dropped off at the Board of Education Building between 3:30 p. m. and 4:30 p. m. and was picked up after 5:30 p. m., and that on both occasions, the defendant was in Mrs. Hooker's car. Charles Holloway, Jr. testified that he met Mrs. Hooker in the shoe department of Macy's and was introduced to defendant at around 5:00 p. m.

The defendant testified in his own behalf and corroborated his mother's account of their activities on the afternoon in question. He further testified that he had never been in the home of the prosecutrix; that he did not know her and did not rape her; that he had no idea how his fingerprints could have gotten on the bedroom dresser and did not believe they were his prints. Thereupon, the defense rested.

The state's rebuttal evidence (the admissibility of which is the subject of defendant's second assignment of error) consisted of the testimony of two witnesses, employees of Macy's.

William H. MacKinnon, Director of Security, identified and testified as to the authenticity of cash register tapes, sales audit receipts and a time card of a salesman, all with reference to Macy's business in the shoe department for the day in question. Preliminarily, he stated that, while all use the same register, each salesman has an individual "key" for the register, which he uses to identify his personal sales, so that the same can be totaled for each day. He stated that these records showed that the sale to Mrs. Hooker by the particular salesman involved took place 12 transactions before another salesman rang up his total for the date, and that the time card showed this employee "checked out" from work at 4:10 p. m. on August 26, 1974.

The manager of this department testified that on the basis of the records and the testimony of MacKinnon and the length of time it takes to serve a customer, make a sale and write it up, the sales to Mrs. Hooker would have been made one-half hour or more before 4:10 p. m., the time the other salesman involved checked out his time. He stated that from these records the sale to Mrs. Hooker was made not later than 3:40 p. m., which time by simple arithmetic calculation would be 18 minutes after Mrs. Hooker testified she left her home in the company of the defendant.

In his opening argument, the assistant prosecuting attorney, commenting upon this facet of the state's rebuttal testimony and after recalling Mrs. Hooker's testimony as to her itinerary, said:

"MR. JAMES: * * * Well, it is physically impossible to get from 18th and Benton to the Board of Trade (sic), to a parking lot behind Macy's, down to the budget shoe sales * * *"

The defense thereupon objected:

"MR. BLOEMKER: I am going to object to that. There has been no testimony on the possibility or impossibility of accomplishing that."

The court ruled:

"THE COURT: That is argument. I think it's a reasonable inference to be drawn from the evidence. Overruled."

The defendant urges this ruling as reversible error. The ruling was not error. The settled law in this state is that a prosecutor may not argue matters not in evidence. *State v. Swing*, 391 S.W.2d 262, 265[3] (Mo.1965); *State v. Furgerson*, 152

Mo. 92, 53 S.W. 427, 428–429[4] (1899). However, it is equally well-settled that, in argument, a prosecutor may draw any inferences deducible from the facts in evidence. *State v. Laster,* 365 Mo. 1076, 293 S.W.2d 300, 306[7] (Mo. banc 1956); *State v. Taylor,* 508 S.W.2d 506, 514[16] (Mo.App. 1974). It was a proper inference from the evidence for the assistant prosecutor to argue that from the defendant's mother's testimony of the activities, routes and stops that she and her son made between 3:22 p. m. (he omitted the stop for gasoline) and the testimony of rebuttal witness Hopewell that the records showed the shoe sale could not have been made later than 3:40 p. m., it was impossible that all this could be accomplished within a time span of eighteen minutes.

■ The trial court has wide discretion as to the latitude to be permitted in counsels' closing arguments. *State v. Hill,* 328 S.W.2d 656, 660[7] (Mo.1959); *State v. Wright,* 515 S.W.2d 421, 432[8] (Mo. banc 1974). This court will not reverse the trial court's ruling on the propriety of counsel's argument unless there has been a clear abuse of discretion. *State v. Jewell,* 473 S.W.2d 734, 741[8] (Mo.1971); *State v. Hill,* 328 S.W.2d 656, 660[7] (Mo.1959). No such abuse of discretion appears in this record. Defendant's first assignment of error is ruled against him.

The basis for defendant's second assignment of error arises from the following trial incidents:

After the defense concluded his case, the court inquired of the assistant prosecutor if it was the state's intention to present rebuttal evidence. In response to this inquiry, the assistant prosecutor advised the court that some difficulty had been encountered in contacting the Macy's employees to be used as rebuttal witnesses, but that "they were on their way". At this point, the trial judge suggested that the time be utilized to settle the instructions, and this was done without objection or further discussion with reference to the state's rebuttal testimony.

It is then evident from the record that the assistant prosecuting attorney thereaft-er had Mr. William MacKinnon present and ready to testify. The following appears:

"MR. BLOEMKER: (Defense counsel) Well, at this time, *I am going to object to the testimony of this witness in that he hasn't been previously endorsed.* I don't have any idea what his testimony is going to be.

"MR. SCHRADER: (Assistant Prosecuting Attorney) This is rebuttal testimony, Your Honor. We have no duty or obligation to endorse rebuttal witnesses.

THE COURT: Overruled." (Emphasis supplied)

At the conclusion of Mr. MacKinnon's testimony, the state called Mr. John Hopewell and the following appears:

"MR. BLOEMKER: I am going to object to the testimony of this witness *on the same grounds I objected to the testimony of the previous witness in that he hasn't been endorsed.* I have had no chance *to discover* what his testimony will be. At this time I have no idea what it will be, and I am caught completely unaware.

THE COURT: It's rebuttal testimony. I don't know there is any obligation to furnish rebuttal testimony. Overruled. Proceed." (Emphasis supplied)

■ Rule 24.17, Rules of Criminal Procedure, requires that the names of all material witnesses be endorsed upon an indictment or information. This rule has remained as controlling in criminal proceedings and virtually without change since 1951. Its source is found in Missouri statutes dating back to 1879. However, the decisional law has long held that rebuttal witnesses need not be so endorsed. *State v. Malone,* 301 S.W.2d 750, 758[25] (Mo.1957); *State v. Payne,* 342 S.W.2d 950, 954[4, 5] (Mo.1961); *State v. Washington,* 383 S.W.2d 518, 524[11, 12] (Mo.1964). In *State v. Peel,* 469 S.W.2d 33, 36[3] (Mo.1971), and *State v. Gamache,* 519 S.W.2d 34, 41[12] (Mo.App. 1975), this rule was applied to witnesses called by the state in rebuttal to an alibi defense. The ruling of the trial court to the defense objections was, therefore, proper and free from error.

In his motion for a new trial, this matter was thus presented:

"7. The court erred in allowing the state to present rebuttal witnesses *without allowing defendant's attorney the opportunity to be apprised of the nature of their testimony and the opportunity to interview said rebuttal witnesses*, in that counsel was placed at a gross disadvantage in efforts to effectively cross-examine the rebuttal witnesses and defendant was thereby deprived of the right to counsel, due process and equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution of the United States." (Emphasis supplied)

In his points relied on (II) in his brief filed in this appeal, the defendant stated:

"The court erred in failing to sustain appellant's objection to the presentation of rebuttal testimony * * *." (The balance of the point is substantially the same as paragraph 7 of the Motion for a New Trial, above set forth).

The state strongly asserts that the basis of defendant's claim of reversible error (II) is different than the one asserted below; that, therefore, the trial objection has been "abandoned" pursuant to Rule 28.02; that defendant has committed several "blatant violations" of Rule 84.04(d); and, thus preserved nothing for review on his second assignment of error. While such technical faults could be justifiably found, due to the serious crime charged, the age of the defendant, and the sentence imposed, each of the charges of error in the trial, after-trial motion and here, have been given full consideration, and no error is found as to defendant's second point.

■ It should be noted that in the defendant's motion for a new trial and here upon appeal, the scope of his trial objections is at least vastly broadened and enlarged, if not completely changed. The principal thrust of his assignment of error in the motion and in his brief before this court is that by failing to sustain his trial objections and permitting the state to present the rebuttal evidence, he was deprived of an "opportunity" to make appropriate discovery, was placed at a "gross disadvantage" and deprived of substantial constitutional rights. (These asserted constitutional deficiencies are without merit and, in any event, cannot be considered because not raised at the earliest opportunity, and are untimely.) By the same token, the defendant made no attempt to avail himself of any discovery proceedings which may have been available to him under the old sections of Rule 25, Rules of Criminal Procedure, or the new ˙sections of that rule, which became effective July 1, 1974, nor did he ask the court for any relief which may have been available by court order thereunder before trial. Neither did he request an adjournment or recess of the trial in order to be afforded an opportunity to interview the rebuttal witnesses. Where the discretion of the trial court has not been invoked, it cannot be said that there was an abuse of that discretion. *State v. Perryman*, 520 S.W.2d 126, 128[3] (Mo.App.1975).

The judgment is affirmed.

All concur.